DISCIPLINARY COUNSEL *v.* FORBES.

[Cite as *Disciplinary Counsel v. Forbes,* **122 Ohio St.3d 171, 2009-Ohio-2623.**]

*Attorney misconduct — Engaging in conduct that adversely reflects on fitness to practice law — Six-month suspension, stayed on condition.*

(No. 2008-2103 — Submitted March 11, 2009 — Decided June 11, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-096.

_____

**Per Curiam**.

{¶ 1} Respondent, George L. Forbes of Cleveland, Ohio, Attorney Registration No. 0010716, was admitted to the practice of law in Ohio in 1962. In 2007, he was convicted on four misdemeanor charges of filing a false financial-disclosure statement in violation of R.C. 102.02(D) and two misdemeanor charges of accepting gifts of such character as to influence the performance of his duties as a public official in violation of R.C. 102.03(E).

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we publicly reprimand respondent, based on findings that he violated DR 1-102(A)(6) by engaging in conduct that adversely reflects on his fitness to practice law. We accept this finding of professional misconduct; however, respondent's convictions warrant a more exacting sanction than the board recommended. To deter lawyers who work as public officials from violating R.C. 102.02(D) and 102.03(E) and to safeguard the public, we order a six-month suspension of respondent's license to practice, with the suspension stayed on the condition that respondent refrain from further misconduct.

{¶ 3} Relator, Disciplinary Counsel, charged respondent in a one-count complaint with having violated DR 1-102(A)(6) of the former Code of

Professional Responsibility. A panel of board members heard the case and made findings of fact and conclusions of law. A majority of the panel recommended that respondent receive a public reprimand; a dissenting panel member recommended a six-month suspension of respondent's license to practice. The board adopted the panel's findings of misconduct and the majority's recommendation.

**{¶ 4}** The parties have not objected to the board's report.

### Misconduct

**{¶ 5}** Respondent was appointed in 1995 to the board of the Bureau of Workers' Compensation Oversight Commission, an administrative agency created that year as a consequence of reorganization in the Bureau of Workers' Compensation ("BWC"). He was also appointed to the oversight commission's investment committee, which regularly met to review BWC staff recommendations for potential investment consultants and money managers in accordance with BWC investment policy. Respondent remained on the commission until his resignation in 2005.

**{¶ 6}** As a member of the commission from 1995 through 2005, respondent was required under R.C. 102.02(A) to file with the Ohio Ethics Commission annual financial-disclosure statements. The parties stipulated that in filing financial-disclosure statements for these years, respondent knowingly failed to disclose sources of meal and travel expenses and to disclose creditors to whom he owed more than $1,000 as follows:

**{¶ 7}** 1. "Clarke Blizzard and/or Mr. Blizzard's affiliated companies, such as American Express and Northwinds Marketing as a source of gifts, meals, and/or travel expenses for the calendar years 1997 through 2004. The value of the gifts, meals, and/or travel was in excess of $6,000.

**{¶ 8}** 2. "Patrick White of Great Lakes Capital Partners as a source of travel expense for the calendar years 2003 and 2004.

{¶ 9}   3. "The BWC as a source of travel expense for the calendar years 1995 through 2004, despite continuously applying for and receiving reimbursement expenses related to BWC business.

{¶ 10} 4.   "Creditors, including JP Morgan Chase, Citibank, and American Express for calendar years 1998 through 2005."

{¶ 11} At the time respondent received these gifts and loans, Blizzard, companies with which Blizzard was affiliated, and White were performing investment-related services for or soliciting investment-related business from the BWC.   On July 3, 2007, the Franklin County Prosecutor's Office charged respondent with the four violations of R.C. 102.02(D), which prohibits any person from knowingly filing a false financial-disclosure statement.  At the same time, the prosecutor charged the two violations of R.C. 102.03(E), which prohibits any public official or employee from soliciting or accepting "anything of value that is of such a character as to manifest a substantial and improper influence upon the public official or employee with respect to that person's duties."

{¶ 12} On July 5, 2007, respondent pleaded guilty to the four R.C. 102.02(D) charges and no contest to the two R.C. 102.03(E) charges.  He was convicted of all six misdemeanors and sentenced the same day to 30 days in jail, with the sentence suspended.  Respondent was also placed on probation for one year, ordered to pay $6,000 in restitution to the BWC, fined $6,000, and ordered to perform 60 hours of community service.  He complied with the terms of his sentence, prompting the court to terminate his probation in November 2007, almost eight months early.

{¶ 13} The board found that respondent's acts and omissions in violation of R.C. 102.02(D) and 102.03(E) constituted conduct that adversely reflected on his fitness to practice law and thus contravened DR 1-102(A)(6).  We agree that respondent committed this misconduct.

**Sanction**

**{¶ 14}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the lawyer violated and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

**{¶ 15}** Respondent's illegal acts reflected poorly on the legal profession and disserved the public interest. The often quoted rule in *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 278 N.E.2d 670, sets the standard:

**{¶ 16}** "One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. He should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession—because obedience to the law exemplifies respect for the law."

**{¶ 17}** In recommending a public reprimand, the board relied on *Disciplinary Counsel v. Taft*, 112 Ohio St.3d 155, 2006-Ohio-6525, 858 N.E.2d 414, in which Ohio's then governor received a public reprimand after pleading no contest to, and being convicted on, four misdemeanor counts of filing false financial-disclosure statements in violation of R.C. 102.02(D). In that case, evidence suggested that the governor had not specifically intended to conceal the names of benefactors who had paid for certain golf-related expenses and items.

4

Id. at ¶ 6, 11. Moreover, in that case, many factors militated in favor of a lighter sanction, including the fact that the parties had stipulated to a public reprimand in a consent-to-discipline agreement, the respondent had a previously unblemished career in public office, he had paid fines, he had repaid benefactors, and he had made a public apology in accordance with the sentencing court's order. Id. at ¶ 7, 10.

{¶ 18} As the dissenting panel member in this case observed, however, respondent was not convicted on only the four counts of filing a false financial-disclosure statement. He was also convicted on two counts of accepting gratuities offered to curry favor and obtain substantial and improper influence in the performance of his duties as a public official—the very crime that the R.C. 102.02(D) reporting requirement is in force to prevent, *Taft*, 112 Ohio St.3d 155, 2006-Ohio-6525, 858 N.E.2d 414, ¶ 4. Of respondent's no-contest plea to R.C. 102.03(E), the dissent aptly reasoned:

{¶ 19} "A lawyer cannot be allowed to admit the allegations of a criminal complaint in his criminal case and then disavow or explain away that admission in his disciplinary case. Once a lawyer enters a plea of guilty (or, I believe, no contest) to a criminal charge, the facts that formed the basis for that charge are established and indisputable for purposes of any ensuing disciplinary proceeding, and the lawyer cannot explain them away, as Mr. Forbes and his attorneys tried to do in this disciplinary proceeding. *Cincinnati Bar Assn. v. Powers* [119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 22]."

{¶ 20} Respondent conceded that he should have reported the following: (1) over $6,000 in meals and travel from Clarke Blizzard and affiliated entities, (2) three short private-plane trips, valued at $3,300, from Patrick White, (3) travel reimbursement from BWC, and (4) various credit card charges over $1,000. But his defense attorney testified as a witness and persuaded a majority of panel members that the actual monetary value of the gratuities amounted to far less than

the ethics-commission investigation seemed to substantiate. In particular, a majority of the panel did not believe that Blizzard, who had been convicted of felony bribery for his dealings with the BWC's former chief financial officer, had spent at least $22,400 in travel and entertainment expenses for respondent. The defense attorney also persuaded a majority of the panel to believe that respondent was not in a position to nor did he steer work to either White or Blizzard.

{¶ 21} The dissenting panel member was not so convinced. Citing respondent's acknowledgement that he, along with other members of the oversight committee, had approved American Express, with whom Blizzard was affiliated, to manage up to $800 million in BWC funds, the dissenter accepted respondent's pleas to criminal conduct as conclusive:

{¶ 22} "Based on these facts, I believe the panel should reject Mr. Forbes' assertion that the gifts, meals, and travel Mr. Blizzard and Mr. White bestowed on him had no substantial or improper influence over him. His no contest plea and conviction simply belie any such suggestion. * * *

{¶ 23} "Moreover, far from accepting Mr. Forbes' proffered attempt to explain away his no contest plea and conviction, I would treat his attempt to explain it away as an *aggravating* factor that, coupled with the fact he was convicted of two more offenses than Governor Taft, justifies a more severe sanction. At the very least, I believe Mr. Forbes' attempt to explain away his two additional convictions constitutes a refusal to acknowledge the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(1)(g)."

{¶ 24} We agree. "[A] disciplinary proceeding is not an appropriate forum in which to collaterally attack a criminal conviction." *Bar Assn. of Greater Cleveland v. Chvosta* (1980), 62 Ohio St.2d 429, 430, 16 O.O.3d 452, 406 N.E.2d 524. The judgment entries of respondent's convictions conclusively establish his guilt of the charged offenses. Accord *Disciplinary Counsel v. McAuliffe*, 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209, ¶ 23. And to the extent that

6

respondent attempts to minimize his culpability, he fails to acknowledge it and thereby exhibits the aggravating feature set forth in BCGD Proc.Reg. 10(B)(1)(g).

{¶ 25} But after weighing the mitigating features of respondent's case, we do not impose the six-month actual suspension advocated by the dissenting member of the panel. The board found five of the seven mitigating factors listed in BCGD Proc.Reg. 10(B)(2) and nothing to weigh against him. Agreeing with the stipulations, the board found the factors in sections 10(B)(2)(a), (c), (d), (e), and (f) of the rule to be present in this case: absence of prior disciplinary record, full and free disclosure to the disciplinary board and cooperative attitude toward the disciplinary proceedings, restitution to the Bureau of Workers' Compensation, positive character and reputation evidence, and imposition of other penalties.

{¶ 26} Respondent has a long history as a prominent attorney and defender of civil rights in Cleveland, including serving as president of the NAACP. He served on Cleveland City Council for 26 years, for the last 18 as council president. He has further contributed greatly to the Cleveland area throughout his lifetime and received numerous awards for his commitment to the community.

{¶ 27} We see little chance that respondent will repeat the ethical mistakes committed in this case. But he compromised his duties to the public and the legal profession, and thus, a six-month suspension from practice, with the suspension stayed on the condition of no further misconduct, is appropriate.

{¶ 28} We therefore suspend respondent from the practice of law in Ohio for six months; however, the suspension is stayed on the condition that respondent refrain from further acts and omissions constituting professional misconduct. If respondent fails to comply with this condition, the stay will be lifted, and respondent will serve the six-month suspension.

{¶ 29} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent and would publicly reprimand the respondent.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Chester, Willcox & Saxbe, L.L.P., Charles Rockwell Saxbe, and Joseph C. Pickens; and Clarence Rogers, for respondent.

_____