DISCIPLINARY COUNSEL *v.* ENGEL.

[Cite as *Disciplinary Counsel v. Engel,* **132 Ohio St.3d 105, 2012-Ohio-2168.**]

*Attorneys—Misconduct—Two violations of the Rules of Professional Conduct— Six-month license suspension.*

(No. 2011-1722—Submitted December 7, 2011—Decided May 17, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-004.

_____

**Per Curiam**.

{¶ 1} Respondent, Joshua Adam Engel of Wilmington, Ohio, Attorney Registration No. 0075769, was admitted to the practice of law in Ohio in 2003. On February 14, 2011, relator, disciplinary counsel, filed a complaint alleging that while serving as chief legal counsel for the Ohio Department of Public Safety ("DPS"), Engel used an e-mail filter to intercept confidential communications, including investigatory materials belonging to the Ohio inspector general and Ohio Ethics Commission, the United States attorney, and the United States Department of Justice. As a result of this conduct, Engel pleaded guilty to three third-degree misdemeanor charges of disclosing confidential information belonging to the inspector general. Relator alleged that Engel also violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and (h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 2} The Board of Commissioners on Grievances and Discipline rejected the parties' consent-to-discipline agreement, which had recommended a public reprimand. Although the parties entered into stipulated findings of fact,

misconduct, and mitigation, a three-member panel of the board conducted a hearing in which it heard testimony from Engel and three character witnesses and received a number of exhibits. Relator recommended a stayed six-month license suspension. The panel adopted Engel's proposed sanction of a public reprimand, and the board adopted the panel's report in its entirety. We adopt the board's findings of fact and misconduct. But for the reasons that follow, we conclude that a six-month actual suspension from the practice of law is the appropriate sanction for Engel's misconduct.

**Misconduct**

{¶ 3} Engel served as chief legal counsel to DPS from December 2007 to May 2010. He testified that during his tenure, DPS had a poor working relationship with the inspector general, an autonomous investigator appointed by the governor to investigate wrongdoing within state offices and law enforcement. DPS also conducted confidential investigations. The inspector general did not have a sufficient number of investigators and developed a practice of cherry-picking DPS's highway-patrol employees—without the knowledge or consent of the DPS director—to conduct his investigations. Concerned that this process impeded his ability to legally protect these borrowed employees or account for their work product, however, Engel met with the director of DPS, the governor's office, and the inspector general to object to the inspector general's practice. No resolution was reached.

{¶ 4} At Engel's disciplinary hearing, one witness testified that on numerous occasions, a Columbus Dispatch reporter had received information related to confidential DPS investigations before the director of DPS received it. Engel suspected that the leaks were from the DPS personnel conscripted by the inspector general, through the inspector general's office, to the press. The leaks suggested to Engel and his staff that the legal advice and information that they gave to DPS employees were not being held in confidence. But there were no

procedures in place to resolve such interdepartmental disputes or to discover the source of such media leaks.

{¶ 5} DPS had a departmental policy stating that employees had no right of privacy to e-mails on the state e-mail system. Therefore, in an effort to find the source of the leaks, Engel instructed DPS information-technology personnel to create an e-mail filter that would capture DPS employee e-mails to and from media outlets, as well as e-mails sent to DPS employees by the inspector general's office. Copies of these e-mails trapped by the filter were forwarded to Engel and his designees. But because several DPS employees were working on assignments for the inspector general and not DPS, the filter intercepted confidential communications about civil and criminal investigations that the inspector general was conducting with the Ohio Ethics Commission, the United States Attorney's Office, and the United States Department of Justice. The filter then sent copies of these confidential communications to persons who were not authorized to receive them, including Engel. Recklessly disclosing inspector-general confidential information is a misdemeanor criminal offense.

{¶ 6} Engel did not intend to capture confidential information. Upon questioning by the panel, Engel testified that he recalled intercepting only one confidential e-mail, but acknowledged that there may have been more, and he kept the filter in place for almost a year. In hindsight, he agreed that he should have terminated the filter when he discovered that it had captured confidential information. As a result of this conduct, Engel was charged with and pleaded guilty to three third-degree misdemeanor counts of disclosing confidential inspector-general information, and he received a 30-day suspended jail sentence and a $750 fine on each count. *State v. Engel*, Franklin C.P. No. 10CR-10-6185 (Oct. 26, 2010).

**{¶ 7}** The parties stipulated and the board found that Engel's conduct violated Prof.Cond.R. 8.4(d) and (h). We adopt the board's findings of fact and misconduct.

## Sanction

**{¶ 8}** In recommending a sanction, the panel and board considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

**{¶ 9}** The parties stipulated that three mitigating factors are present: the absence of a prior disciplinary record, cooperation with the disciplinary process, and the imposition of the additional penalties of criminal convictions and sentences. BCGD Proc.Reg. 10(B)(2)(a), (d), and (f). The board accepted those mitigating factors and also found that Engel had not had a dishonest or selfish motive and that he had presented evidence of his good character apart from the underlying misconduct. BCGD Proc.Reg. 10(B)(2)(b) and (e). The board found no aggravating factors and that Engel's conduct caused no harm to anyone but himself.

**{¶ 10}** Relator now recommends a six-month stayed suspension for Engel's misconduct. Engel, on the other hand, argues that a public reprimand is the appropriate sanction.

**{¶ 11}** The board noted that multiple character witnesses attested to Engel's honesty, integrity, and dedication and that the record contains ample evidence of his public service, beginning in 1992 with the award of a Truman scholarship for public service while he attended the University of Pennsylvania. The board also found that Engel suffered from job-related stress, which was exacerbated by the criminal and disciplinary proceedings and has led to severe depression and suicidal thoughts. He voluntarily sought psychiatric care and psychological counseling, and there is no claim that he is mentally unfit to

4

practice law. Engel continues his significant pro bono work for the citizens of Clinton County.

{¶ 12} Citing these factors and *Disciplinary Counsel v. Taft*, 112 Ohio St.3d 155, 2006-Ohio-6525, 858 N.E.2d 414, the board concluded that a public reprimand was the appropriate sanction for Engel's misconduct. There, we disciplined then-governor Robert Taft for engaging in conduct that adversely reflected on his fitness to practice law by failing to comply with financial-disclosure laws regarding gifts worth $5,682.26. *Id.* at ¶ 4-6, ¶ 15. In imposing a public reprimand, we considered the absence of a prior disciplinary record, Taft's long and unblemished career in public office, his cooperation in the disciplinary proceedings, his timely, good-faith efforts to make restitution, and the sanctions imposed for his four misdemeanor convictions for violating R.C. 102.02(D) (prohibiting any person from knowingly filing a false disclosure statement). Id. at ¶ 7, 10. We adopted the board's findings that Taft's nondisclosures were the result of oversight, rather than a conscious effort to conceal certain relationships, and acknowledged that he himself had reported his ethical lapse and had publicly apologized for his personal failure to maintain the standards of integrity to which all public officials must adhere. Id. at ¶ 11. We also adopted the board's reasoning that Taft's carelessness distinguished his case from others that resulted in stayed suspensions for lawyers who deliberately withheld that which they were required by law to reveal. Id. at ¶ 12.

{¶ 13} Engel did not intend to intercept confidential information relating to ethics and law-enforcement investigations when he installed the e-mail filter. But when he discovered that the e-mail filter was intercepting such information, he did nothing to stop it and left the filter in place for "a couple months, maybe going on a year." The board found that Engel had harmed only himself and declined to increase his sanction based on the potential for inchoate harm arising from his misconduct. We find, however, that his distribution of confidential

information about pending law-enforcement and ethics investigations to those who were not authorized to receive such information—while he served as chief legal counsel for DPS—worked to undermine public trust not only in the legal system, but in state government as a whole. Unlike Taft, who was found to have violated the prohibition against a lawyer's engaging in conduct that adversely reflects on his fitness to practice law with his inadvertent failure to comply with financial-disclosure laws, Engel acted recklessly and stipulated that his conduct adversely reflected on his fitness to practice law *and* was prejudicial to the administration of justice. For these reasons, we find that a greater sanction is warranted. Accordingly, we suspend Joshua Adam Engel from the practice of law in Ohio for six months. Costs are taxed to Engel.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., dissents.

MCGEE BROWN, J., not participating.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 14} I respectfully dissent. The panel adopted Engel's proposed sanction of a public reprimand, and the board adopted the panel's report in its entirety. The relator recommended a stayed six-month license suspension. However, this court has increased the sanction to a six-month actual suspension.

{¶ 15} The parties stipulated that three mitigating factors are present: the absence of a prior disciplinary record, cooperation with the disciplinary process, and the imposition of the additional penalties of criminal convictions and sentences. The board accepted these mitigating factors and also found that Engel had not had a dishonest or selfish motive and that he had presented evidence of his good character apart from the underlying misconduct. The board concluded

that there were no aggravating factors and that Engel's conduct caused no harm to anyone but himself.

{¶ 16} The panel had the opportunity to personally observe Engel and judge his credibility. I see no reason for this court to second-guess the panel's determinations. Furthermore, the increase in penalty is out of proportion to the violation. *Compare Disciplinary Counsel v. Forbes,* 122 Ohio St.3d 171, 2009-Ohio-2623, 909 N.E.2d 629. I see no justice in increasing the penalty beyond all current recommendations. Therefore, I respectfully dissent.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Crabbe, Brown, and James, L.L.P, Larry H. James, and Christina Curl, for respondent.

_____