DISCIPLINARY COUNSEL *v.* DANN.

[Cite as *Disciplinary Counsel v. Dann,* 134 Ohio St.3d 68, 2012-Ohio-5337.]

*Attorney misconduct—Previous discipline—Former state attorney general—
Misdemeanor convictions—Six-month license suspension.*

(No. 2011-2026—Submitted April 3, 2012—Decided November 20, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 11-024.

——————————

**Per Curiam**.

{¶ 1} Respondent, Marc Edward Dann of Cleveland, Ohio, Attorney Registration No. 0039425, was admitted to the practice of law in Ohio in 1987. In March 2004, we publicly reprimanded Dann for handling a legal matter without adequate preparation. *Mahoning Cty. Bar Assn. v. Dann*, 101 Ohio St.3d 266, 2004-Ohio-716, 804 N.E.2d 428.[1]

{¶ 2} Finding that Dann engaged in conduct that adversely reflects on his fitness to practice law by soliciting improper compensation and filing false financial disclosures while serving as the Ohio attorney general, the Board of Commissioners on Grievances and Discipline now recommends that we suspend Dann's license to practice law in Ohio for six months. Dann objects to the recommended sanction, arguing that the board has not assigned the appropriate weight to the applicable aggravating and mitigating factors and that a fully stayed suspension will adequately protect the public. For the reasons that follow, we

---

1. Dann had agreed to represent a client who sought to modify a qualified domestic relations order ("QDRO") to permit him to make a lump-sum payment to his former wife in lieu of monthly withholdings from his pension benefits. Instead of moving to modify the QDRO, Dann moved the court to terminate a nonexistent spousal-support order. Following this mistake, the client terminated Dann's representation and filed a grievance against him.

overrule Dann's objections and adopt the board's findings of fact, conclusions of law, and recommended sanction.

**Procedural History and Misconduct**

{¶ 3} Dann served as the Ohio attorney general from January 8, 2007, until he resigned on May 14, 2008. He was charged in May 2010 with first-degree misdemeanor counts of soliciting improper compensation in violation of R.C. 2921.43(A)(1)[2] and filing false financial disclosures in violation of R.C. 102.02(D)[3] for conduct that occurred during his tenure as attorney general. *State v. Dann*, Franklin Cty. M.C. Nos. 2010 CRB 9998-1 and 2010 CRB 9998-2 (May 7, 2010). Dann entered an Alford plea to the charge of soliciting improper compensation and pled guilty to filing false financial disclosures. He was found guilty of both counts, was sentenced to pay a $500 fine for each count, and was ordered to perform 500 hours of community service.

{¶ 4} As a result of these criminal convictions, relator, disciplinary counsel, charged Dann with violating Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The parties submitted a consent-to-discipline agreement, which included nine stipulated exhibits and stipulations of fact and misconduct as well as aggravating and mitigating factors. They further stipulated that a six-month

2. R.C. 2921.43(A) provides:

> No public servant shall knowingly solicit or accept, and no person shall knowingly promise or give to a public servant, either of the following:
> (1) Any compensation, other than as allowed by divisions (G), (H), and (I) of section 102.03 of the Revised Code or other provisions of law, to perform the public servant's official duties, to perform any other act or service in the public servant's public capacity, for the general performance of the duties of the public servant's public office or public employment, or as a supplement to the public servant's public compensation;
> (2) Additional or greater fees or costs than are allowed by law to perform the public servant's official duties.

3. R.C. 102.02(D) provides: "No person shall knowingly file a false statement that is required to be filed under this section."

stayed suspension was the appropriate sanction for Dann's misconduct. The board, however, rejected the agreement and remanded the matter to the panel for further proceedings.

{¶ 5} On remand, the parties resubmitted their stipulations, which reiterated that while serving as the Ohio attorney general, Dann hired Anthony Gutierrez as the director of general services and Leo Jennings as the communications director for the Ohio attorney general's office. While Gutierrez and Jennings served in these positions, Dann provided them with free rental housing and associated benefits. His campaign committee, Dann for Ohio Committee, paid at least $7,178 in living expenses for Gutierrez and more than $30,000 for Jennings. Dann also authorized the Marc Dann OAG Transition Corp. to provide a $5,000 interest-free loan to Gutierrez.

{¶ 6} In addition, as a candidate and an elected official, Dann was required to file annual financial-disclosure forms pursuant to R.C. 102.02(A). In April 2007, he filed a required financial-disclosure statement with the Ohio Ethics Commission, but failed to disclose 15 expense-reimbursement checks—totaling $17,540.86—that he had received from his campaign committee. And on his April 2008 financial-disclosure form, he failed to disclose that a campaign contributor and his companies paid $20,803.52 to lease the private jet that transported Dann, his two minor children, Gutierrez's two minor children, and two others to Scottsdale, Arizona, for a Democratic Attorneys General Association seminar in January 2007.

{¶ 7} The panel adopted the stipulated facts and found that Dann's conduct violated Prof.Cond.R. 8.4(h), and the board adopted the panel's report.

### Sanction

{¶ 8} In recommending a sanction, the board considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16;

*Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 9} As mitigating factors, the parties stipulated and the board found that Dann has provided full and free disclosure to the disciplinary board, has displayed a cooperative attitude toward these proceedings, has established his good character and reputation apart from the charged misconduct, and has been subject to other penalties and sanctions through the criminal justice system. *See* BCGD Proc.Reg. 10(B)(2)(d), (e), and (f). The panel also found that as a consequence of his criminal conviction, Dann cannot hold public office for seven years. The only stipulated aggravating factor is Dann's prior disciplinary record. *See* BCGD Proc.Reg. 10(B)(1)(a).

{¶ 10} Dann called four witnesses, including two clients and an attorney who shares office space with him, to testify to his good character and reputation. A staff attorney from the Legal Aid Society of Cleveland testified that Dann participated in this program prior to his criminal conviction and that he continued to be involved even after he completed his community-service obligation. Dann also submitted letters from ten people, including four judges, who attested to his good character and reputation in the community apart from the charged misconduct.

{¶ 11} Dann testified to the humiliation his conduct brought on himself and his family and admitted that his missteps revolved around his self-described hubris or arrogance. He explained that he did not expect to win the election and consequently was not prepared to hire a staff or properly organize his office. This lack of preparation and the competition for experienced government employees among other newly elected officials—some of whom could offer higher salaries— left Dann to hire employees with little or no government experience. Dann also claimed to have relied on the advice of his staff in making hiring decisions,

stating that in hindsight, he believed that his staff recommended hiring people they thought he would want to hire, instead of the people he should have hired.

{¶ 12} Dann admitted that he was aware of legislation enacted to prohibit public employees from receiving additional compensation, noting the case of a previous lieutenant governor who had accepted additional compensation from a campaign committee. But wanting to compensate his employees for their political work, he did not question advisors who reportedly told him that campaign funds could be used for that purpose.

{¶ 13} With regard to his financial-disclosure statements, Dann testified that he did not believe that he had to report the payments received from his campaign committee, because he had already disclosed them on his campaign reports. He did, however, falsely report that the Democratic Attorneys General Association had paid travel expenses of $7,687.14—an amount he claimed to have calculated in accordance with a Federal Election Commission guideline that purportedly equates the value of private-jet travel to two first-class airline tickets. Dann should have reported the actual cost of the trip, which was at least $20,000, and that in fact, an outside group had provided a private plane. Dann also testified that he did not personally prepare his financial-disclosure statements.

{¶ 14} The panel recognized that the primary purpose of the sanction imposed in attorney-discipline matters is not to punish the offender, but to protect the public. *See, e.g.*, *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53; *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975). The panel also acknowledged that we have imposed a public reprimand or fully stayed suspensions for comparable misconduct committed by attorneys while they served as public officials. *See Disciplinary Counsel v. Taft*, 112 Ohio St.3d 155, 2006-Ohio-6525, 858 N.E.2d 414, ¶ 15; *Disciplinary Counsel v. Forbes*, 122 Ohio St.3d 171, 2009-Ohio-2623,

909 N.E.2d 629, ¶ 28; and *Disciplinary Counsel v. Carroll*, 106 Ohio St.3d 84, 2005-Ohio-3805, 831 N.E.2d 1000, ¶ 15.

{¶ 15} In rejecting the parties' recommended sanction of a fully stayed suspension and recommending an actual six-month suspension, the panel cited Dann's poor judgment, his efforts to explain away his ethical breaches, and the unique harm to the legal profession and to public confidence in our government when the attorney general—the chief law-enforcement officer for the state of Ohio—engages in misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

### Dann's Objections to the Recommended Sanction

{¶ 16} Dann objects to the board's recommended sanction, arguing that his mitigating evidence and our precedent weigh in favor of a fully stayed suspension and that the board placed undue emphasis on his status as the attorney general in recommending an actual suspension from the practice of law.

{¶ 17} Dann contends that the board failed to accord sufficient weight to his mitigating evidence. He argues that his resignation from office, the seven-year disqualification from holding a public office,[4] his acceptance of responsibility, his cooperation in the disciplinary proceedings, and evidence of his good character and reputation should be given greater weight. He also argues that his extensive pro bono service to homeowners at risk of foreclosure and the risk of harm to those clients if he is temporarily removed from the practice of law weigh in favor of a fully stayed suspension.

{¶ 18} The board considered each of these factors in crafting its recommended sanction. It noted Dann's cooperation in the disciplinary process, as well as his good character and reputation. The board also identified Dann's criminal sanction and the seven-year bar against holding a public office as

---

4. R.C. 2921.43(E).

6

mitigating factors, but in weighing those factors, it also considered his professed lack of interest in holding another public office. While we find that the services Dann provides to homeowners facing foreclosure are admirable and have some mitigating value, we have also recognized that "service to indigent clients, while mitigating, does not immunize a lawyer from discipline for misconduct." *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, ¶ 51.

**{¶ 19}** Despite the presence of significant mitigating factors, two aggravating factors—Dann's prior discipline and his position as the state's attorney general at the time he committed his current misconduct—weigh in favor of a more severe sanction.

**{¶ 20}** Gov.Bar R. V(6)(C) provides, "Prior disciplinary offenses shall be considered as a factor that may justify an increase in the degree of discipline to be imposed for subsequent misconduct." *See also* BCGD Proc.Reg. 10(B)(1)(a). Indeed, we have stated:

> The purpose of [a disciplinary sanction] is not to punish the individual. It is intended to protect the public, the courts and the legal profession. Thus the moral character of an attorney is at all times to be scrutinized for the purpose of insuring that protection. And such moral character is necessarily at issue in a [disciplinary] proceeding. If a prior attempt at discipline has been ineffective to provide the protection intended for the public, then such further safeguards should be imposed as will either tend to effect the reformation of the offender or remove him entirely from the practice. The discipline for a repeated offense may be much greater than would have been imposed were it a first offense, yet such greater discipline is not a meting out of further punishment

for prior acts but is a determination of the attorney's fitness to practice.

*In re Disbarment of Lieberman*, 163 Ohio St. 35, 41, 125 N.E.2d 328 (1955). Therefore, it is reasonable and proper to consider Dann's previous sanction for professional misconduct as an aggravating factor and to impose a harsher sanction than we might otherwise impose for an attorney who committed comparable conduct but had no prior discipline

{¶ 21} Dann's status as the Ohio attorney general at the time he committed his misconduct also weighs in favor of a greater sanction. *See* BCGD Proc.Reg. 10(B) ("In determining the appropriate sanction, the Board shall consider all relevant factors; precedent established by the Supreme Court of Ohio, and [certain enumerated factors]"). " 'One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. He should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession—because obedience to the law exemplifies respect for the law.' " *Cincinnati Bar Assn. v. Hennekes*, 110 Ohio St.3d 108, 2006-Ohio-3669, 850 N.E.2d 1201, ¶ 13, quoting *Cleveland Bar Assn. v. Stein*, 29 Ohio St.2d 77, 81, 278 N.E.2d 670 (1972).

{¶ 22} For example, we have declared, "It is of utmost importance that the public have confidence in the integrity and impartiality of the judiciary." *Disciplinary Counsel v. Allen*, 79 Ohio St.3d 494, 495, 684 N.E.2d 31 (1997). And we have recognized that misconduct committed by a judge vested with the public's trust causes incalculable harm to the public perception of the legal system. *Disciplinary Counsel v. Hoskins*, 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324, ¶ 81.

{¶ 23} Like judges, the attorney general has a heightened duty to the public by virtue of his elected office. As the chief law officer for the state, the attorney general is charged with providing legal representation and advice to all officers, boards, heads of departments, and institutions of this state. *See generally* R.C. 109.02 and 109.12. For that reason, the work of the attorney general touches upon virtually all areas of our state government. Thus, Dann's criminal and ethical violations reflect poorly on his fitness to practice law and the legal profession as a whole, but also cause incalculable harm to the public perception of the attorney general's office and those government agencies, departments, and institutions that the attorney general advises and represents.

{¶ 24} Although we have imposed public reprimands or fully stayed suspensions for other public officials who have engaged in comparable misconduct, their misconduct is factually distinguishable from Dann's. In *Disciplinary Counsel v. Taft*, 112 Ohio St.3d 155, 2006-Ohio-6525, 858 N.E.2d 414, we publicly reprimanded Governor Robert A. Taft II for filing false disclosure statements. But the combined value of the omitted gifts was less than $6,000, and the board attributed Taft's nondisclosure "to oversight, rather than a conscious effort to conceal certain relationships." *Id.* at ¶ 6, 11.

{¶ 25} In contrast, Dann falsely reported that the Democratic Attorneys General Association paid $7,687.14 for his travel to an Arizona seminar, thereby concealing the fact that a company closely affiliated with a campaign contributor paid more than $20,000 for his travel by private jet. Moreover, he admitted that he was aware of the ethical problems posed by the supplementation of his employees' state salaries, stating, "We were operating in a gray area. I knew we were operating in a gray area, even though I thought we might have been right, that was—that in the position that I was in, that was the wrong decision to make and I take full responsibility for it." Thus, Dann's conduct is more serious than Taft's.

**{¶ 26}** The conduct at issue in *Disciplinary Counsel v. Carroll*, 106 Ohio St.3d 84, 2005-Ohio-3805, 831 N.E.2d 1000, ¶ 4, is likewise distinguishable from the facts of this case. Carroll submitted 11 inaccurate timesheets while serving as the executive director of the Ohio State Barber Board. On some of them, he claimed compensatory time in a manner inconsistent with a directive issued by the Ohio Department of Administrative Services, and on others, he claimed to have worked full days for the Barber Board, when he had actually spent part of those days attending court proceedings for private legal clients. *Id.*

**{¶ 27}** The board found that Carroll's errors were the result of deficient bookkeeping, rather than a desire to receive pay for work that he did not perform. *Id*. at ¶ 10. In light of this fact and numerous mitigating factors, including Carroll's full cooperation in the disciplinary investigation, his payment of restitution before any criminal or disciplinary charges were brought against him, genuine remorse, his explanation of his actions without trying to excuse them, his service to needy clients in a rural county, the absence of harm to his clients, his good character and reputation, and the imposition of criminal sanctions, the board recommended, and we agreed, that a six-month stayed suspension was the appropriate sanction. *Id*. at ¶ 10-12, 15.

**{¶ 28}** In notable contrast to Dann's position as the attorney general, neither Taft nor Carroll held public offices that required them to be licensed attorneys or to actively engage in the practice of law. *See Taft* at ¶ 1; *Carroll* at ¶ 3, R.C. 4709.05(G). And neither of them had a record of discipline for prior misconduct, as Dann does. *Taft* at ¶ 10; *Carroll* at ¶ 10.

**{¶ 29}** The conduct at issue in *Disciplinary Counsel v. Forbes*, 122 Ohio St.3d 171, 2009-Ohio-2623, 909 N.E.2d 629, ¶ 1, 11-12, 23-24, was in some ways more egregious than Taft's, Carroll's, or Dann's because Forbes accepted gifts that were intended to obtain a substantial and improper influence over the performance of his duties as a member of the Bureau of Workers' Compensation

Oversight Commission, knowingly failed to disclose those gifts on his financial-disclosure statements, and attempted to explain away his criminal convictions for that conduct. *Id*. at ¶ 11, 19. Nonetheless, we found that the numerous mitigating factors, including the absence of a prior disciplinary record, full cooperation in the investigation and disciplinary proceedings, the payment of restitution to the bureau, positive character and reputation evidence, the imposition of criminal penalties, and Forbes's long history as a prominent attorney and defender of civil rights in Cleveland outweighed the sole aggravating factor—Forbes's refusal to acknowledge the wrongful nature of his conduct. *Id.* at ¶ 19, 24-26. Although the board recommended only a public reprimand for Forbes's misconduct, *id.* at ¶ 17, we imposed a six-month stayed suspension. *Id.* at ¶ 28.

{¶ 30} In contrast to the public reprimand in *Taft* and the fully stayed suspension imposed in *Carroll* and *Forbes*, we imposed an actual six-month suspension in *Disciplinary Counsel v. Engel*, 132 Ohio St.3d 105, 2012-Ohio-2168, 969 N.E.2d 1178, for an attorney found to have engaged in conduct prejudicial to the administration of justice and adversely reflecting on his fitness to practice law during his tenure as chief legal counsel for the Ohio Department of Public Safety ("DPS"). *Id.* at ¶ 13. In contrast to Dann's two first-degree misdemeanor convictions, Engel was convicted of three third-degree misdemeanor counts of disclosing confidential information belonging to the inspector general. He had recklessly placed an e-mail filter that captured e-mails sent to DPS employees by the inspector general's office, sent the captured information to himself and several other persons, and left that filter in place even after he discovered that it had intercepted and disseminated confidential information. *Id.* at ¶ 2, 5. In *Engel*, we noted the absence of any aggravating factors and the presence of substantial mitigating factors—including cooperation in the disciplinary proceedings, the imposition of criminal sanctions, the absence of a dishonest or selfish motive, evidence of Engel's good character, and his

significant pro bono work. *Id.* at ¶ 9, 11. But in contrast to Taft's inadvertent failure to disclose, we found that Engel's reckless conduct and its prejudicial effect on the administration of justice warranted an actual suspension from the practice of law rather than the six-month stayed suspension sought by relator and the public reprimand recommended by the board. *Id.* at ¶ 10, 12-13.

{¶ 31} While Dann has offered substantial mitigating evidence, he has previously been disciplined by this court, he has admitted that he knowingly engaged in the conduct that resulted in his criminal conviction for soliciting improper compensation, and his conduct with respect to his financial-disclosure statements was at best reckless. He also engaged in this unlawful conduct while serving as the state's chief legal officer.

{¶ 32} Having considered Dann's conduct, the applicable aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, we find that the board properly weighed the aggravating and mitigating factors present in this case. Therefore, we overrule Dann's objections, concur with the findings of the board, and agree that a six-month actual license suspension is the appropriate sanction for Dann's misconduct.

{¶ 33} Accordingly, we suspend Marc Edward Dann from the practice of law in Ohio for six months. Costs are taxed to Dann.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

James E. Arnold & Associates, L.P.A., and Alvin E. Mathews Jr., for respondent.

_____