Kennedy, J.,
dissenting.
{¶ 36} I dissent. Lawyers across Ohio, be on the qui vive! Certified grievance committees be damned! Like the sinners in Dante Alighieri’s Canto YII of the Divine Comedy: Inferno, the lead opinion’s interpretation of our rules would subject members of the Ohio bar to the prospect of multiple disciplinary proceedings in connection with the same alleged misconduct involving the same alleged victim.
{¶ 37} Because the cornerstone of our disciplinary procedure is the filing, investigation, and disposition of “a grievance,” Gov.Bar R. V(9), and the grievances at issue here involve the same victim (the taxpayers of Cuyahoga County) and the same misconduct (the falsification of timesheets), I would give full faith and credit to the disposition of the grievance before the Cleveland Metropolitan Bar Association (“CMBA”) as explicitly required by the finality provision set forth in Gov.Bar R. V(10)(D), overrule the recommendation of the board, and grant the motion filed by respondent, Roger Kramer, to dismiss this action. Therefore, I dissent.
{¶ 38} The lead opinion recasts respondent’s argument as a challenge to the investigative authority of disciplinary counsel. But respondent’s argument actually focuses on the question whether finality attaches to a grievance after a certified grievance committee investigates the grievance and a majority of that committee votes not to file a formal complaint. Construing the provisions of Gov.Bar R. V(9) and (10) together, the answer to that question is yes.
{¶ 39} This is a question of first impression, and because we have not had occasion to interpret these particular Rules for the Government of the Bar, there is scant relevant case law. However, when interpreting other administrative rules in past cases, we have applied our rules of statutory construction. See, e.g., State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm., 57 Ohio St.2d 51, 54, 386 N.E.2d 1107 (1979); McFee v. Nursing Care Mgt. of Am., Inc., 126 Ohio St.3d 183, 2010-Ohio-2744, 931 N.E.2d 1069, ¶ 27. Therefore, our role in this case is to apply traditional rules of statutory construction and construe the applicable rules together, harmonizing them to give full effect to each provision. See State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections, 72 Ohio St.3d 289, 294, 649 N.E.2d 1205 (1995).
*434 {¶ 40} By failing to do so, the lead opinion reaches a conclusion that is contrary to the intention distinctly reflected in our rules—i.e., that following an investigation, a grievance achieves finality 14 days after a certified grievance committee decides not to file a formal complaint and an appeal is not filed. Gov.Bar R. V(10)(D).
{¶ 41} Focusing on the identity of the anonymous grievant in this case, the panel baldly asserted that the anonymous grievance was “filed by someone other than the Cuyahoga County Inspector General,” who filed the grievance investigated by the CMBA, and that “nothing in Gov.Bar R. Y precluded the filing of a separate grievance by a different grievant.” The board adopted the panel’s reading of the rules and concluded that since the inspector general was the source of the grievance before the CMBA and the source of the grievance before relator was anonymous, “it is likely there are two different grievants.” The lead opinion tacitly relies on this speculation and accepts the board’s reasoning by restating the panel’s bald assertion.
{¶ 42} However, an overview of the rules establishes a systematic framework for the filing, investigation, and disposition of “a grievance.” Gov.Bar R. V(9). The identity of the grievant is not relevant.
{¶ 43} Gov.Bar R. V(9)(C) specifically establishes the broad power of a local certified grievance committee to investigate a grievance. In conjunction with the controlling use of the term “grievance,” Gov.Bar R. V(9) establishes that the focal point of an investigation is the allegation of misconduct. See Gov.Bar R. V(9)(B) and (C). Conversely, the only other reference in Gov.Bar R. V(9) to a “grievant” concerns the right of a grievant to receive notice of a “potential right to an award” from the Lawyers’ Fund for Client Protection. Gov.Bar R. V(9)(F).
{¶ 44} Our rules do not define the term “grievance” or the term “grievant.” Giving these terms their plain and ordinary meaning, see Northeast Ohio Regional Sewer Dist. v. Bath Twrp., 144 Ohio St.3d 387, 2015-Ohio-3705, 44 N.E.3d 246, ¶ 12, “grievance” is defined as “[a]n injury, injustice, or wrong that potentially gives ground for a complaint,” Black’s Law Dictionary 818 (10th Ed.2014). In the past, we have used the word “grievance” to mean a complaint alleging misconduct. See Columbus Bar Assn. v. Troxell, 129 Ohio St.3d 133, 2011-Ohio-3178, 950 N.E.2d 555, ¶ 12.
{¶ 45} Typically used in an employment-law context, “grievant” is defined as “[a]n employee who files a grievance and submits it to the grievance procedure outlined in a collective-bargaining agreement.” Black’s Law Dictionary 818 (10th Ed.2014).
{¶ 46} The distinction of use between the terms “grievance” and “grievant” in Gov.Bar R. V(9) continues in Gov.Bar R. V(10), which controls the filing of a complaint. In Gov.Bar R. V(10), the term “grievance” is used in conjunction with *435 the terms “allegation” or “complaint,” see Gov.Bar R. V(10)(A) and (C), while the term “grievant” is used exclusively in connection with a grievant’s right to receive notice of a certified grievance committee’s intent not to file a complaint and a grievant’s right to file an appeal from that decision, see Gov.Bar R. V(10)(C) and (D). Explicit in Gov.Bar R. V(10) is the notion that following an investigation, a grievance will achieve finality. See Gov.Bar R. V(10)(C) and (D).
{¶ 47} If a grievance is reviewed and investigated by disciplinary counsel and disciplinary counsel disposes of the grievance by declining to file a formal complaint, the grievant has the right to notice of that disposition but no right to review by the board. See Gov.Bar R. V(10)(C) and (D). In contrast, if after a review and investigation a majority of a certified grievance committee votes to dispose of the grievance by declining to file a formal complaint, then the grievant is entitled to notice and the right to file an appeal with the board within 14 days, and that appeal is reviewed pursuant to an abuse-of-discretion or error-of-law standard. Gov.Bar R. V(10)(B) through (D).
{¶ 48} Construing these provisions together in a manner that gives full effect to each, when a certified grievance committee has disposed of a grievance by declining to file a formal complaint, that grievance achieves finality after 14 days in the absence of an appeal. Any other construction of these rules would render meaningless the time limits imposed by Gov.Bar R. V(9)(D) on the investigation of grievances, the notice requirements imposed by Gov.Bar R. V(10)(C) following a certified grievance committee’s determination not to file a complaint, and the grievant’s right to review and the standard of review set forth in Gov.Bar R. V(10)(D).
{¶ 49} Disciplinary counsel and the lead opinion both emphasize that Gov.Bar R. V(9)(C)(1) authorizes disciplinary counsel to review and investigate any grievance or matter brought to his attention. Gov.Bar R. V(9)(C)(1) does grant this authority to disciplinary counsel, but the rule does not explicitly recognize the finality of a certified grievance committee’s determination not to file a complaint under Gov.Bar R. V(10)(D). Moreover, Gov.Bar R. V(10)(D) does not explicitly acknowledge disciplinary counsel’s authority under Gov.Bar R. V(9)(C)(1) to investigate any grievance. Therefore, these two provisions conflict.
{¶ 50} The rules of statutory construction provide that “ ‘where a statute couched in general terms conflicts with a specific statute on the same subject, the latter controls.’ ” State v. Taylor, 113 Ohio St.3d 297, 2007-Ohio-1950, 865 N.E.2d 37, ¶ 12, quoting Humphrys v. Winous Co., 165 Ohio St. 45, 48, 133 N.E.2d 780 (1956). Therefore, the specific finality provision of Gov.Bar R. V(10)(D) controls over the more general provision in Gov.Bar R. V(9)(C) granting investigatory authority to disciplinary counsel.
*436 {¶ 51} By implication, the lead opinion asserts that this court must allow multiple proceedings in connection with the same alleged misconduct involving the same victim unless and until a new rule is adopted. Nonsense. All we need to do is to give effect to the intention clearly reflected in our existing rules. See Summerville v. Forest Park, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 19 (in statutory construction, the primary rule is to give effect to the intention of the legislature). To that end, while we liberally construe the provisions of Gov.Bar R. V “for the protection of the public, the courts, and the legal profession,” Disciplinary Counsel v. Heiland, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 34, we should refrain from a construction that produces an unreasonable or absurd result, State ex rel. Asti v. Ohio Dept. of Youth Servs., 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 28. We have long held that the disciplinary process “is neither a criminal nor a civil proceeding,” In re Judicial Campaign Complaint Against Carr, 76 Ohio St.3d 320, 322, 667 N.E.2d 956 (1996), and that “[t]he standards of due process in such proceedings are not those in a criminal proceeding,” Ohio State Bar Assn. v. Illman, 45 Ohio St.2d 159, 162, 342 N.E.2d 688 (1976), but until today, we have never declared that a determination by a certified grievance committee not to file a formal complaint after review and investigation of a grievance lacks finality. The lead opinion’s declaration renders meaningless Gov.Bar R. V(10)(C) and (D) and the broad authority that the lead opinion proclaims that a certified grievance committee shares with disciplinary counsel to review and investigate grievances.
{¶ 52} Motivated by the belief that “some discipline is warranted,” lead opinion at ¶ 17, the author and joiners of the lead opinion offer in support of their desired outcome an analysis that is unnecessary “ ‘to protect the public, the courts and the legal profession,’ ” Disciplinary Counsel v. Dann, 134 Ohio St.3d 68, 2012-Ohio-5337, 979 N.E.2d 1263, ¶ 20 (noting the purpose of a disciplinary sanction), quoting In re Disbarment of Lieberman, 163 Ohio St. 35, 41, 125 N.E.2d 328 (1955). Pursuant to the lead opinion, taken tp its logical conclusion, a grievance would never achieve finality: even disciplinary counsel’s determination not to file a formal complaint under Gov.Bar R. V(10)(C), which is not subject to review, would be subject to reinvestigation by a certified grievance committee, see Gov.Bar R. V(9)(C)(1).
{¶ 53} This interpretation would permit the repeated filing of a grievance with both disciplinary counsel and the certified grievance committee, and—depending on who reviews the incoming grievance, who disciplinary counsel happens to be, and the composition of the committee—a new investigation may arise and ultimately lead to a formal complaint. Meanwhile, the subject of a grievance would be left in perpetual limbo. This interpretation also would permit a grievant to circumvent the appellate process and would supplant the abuse-of- *437 discretion and error-of-law standards of review with a de novo review standard. See Gov.Bar R. V(10)(C) and (D).
{¶ 54} In this case, respondent underwent an investigation by the CMBA that lasted five months. After being advised that the matter was being dismissed without the filing of a formal complaint, he was notified by a letter dated November 19, 2013, that an investigation into the same misconduct involving the same victim was beginning again. One year and 26 days later, disciplinary counsel filed a formal complaint.[1]
{¶ 55} The lead opinion states that the anonymous grievance was filed prior to dismissal by the CMBA, but that is irrelevant to this determination. The disposition of the grievance before the CMBA achieved finality 14 days after respondent was notified of that determination—in early December 2013. The formal complaint filed by disciplinary counsel was time-stamped by the board as filed on December 15, 2014. That was more than 12 months after the CMBA’s disposition of the grievance achieved finality.
{¶ 56} While we should recognize the independence of the investigative entities in our system of discipline, that independence does not supersede our duty to reasonably interpret our rules so that all rules are given full effect. Disciplinary counsel may investigate, but the finality provision of Gov.Bar R. V(10)(D) precludes us from allowing the anonymous grievance to proceed, since it involves the same victim and the same misconduct alleged by the inspector general’s grievance. Any other outcome here renders meaningless Gov.Bar R. V(10)(C) and (D).
{¶ 57} In Ohio there are 33 certified grievance committees. Office of Disciplinary Counsel, 2015 Annual Report 7, http://www.supremecourt.ohio.gov/DisciplinarySys/odc/annualReports/2015.pdf (accessed Aug. 9, 2016). Members of those certified grievance committees perform an invaluable service in our system of professional discipline. We entrust them with fulfilling an important mission— to protect the citizens, the courts, and the honor and nobility of our great profession. See Heiland, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, at ¶ 34. Our rules afford those committees a measure of great deference. It is only *438 when a disposition is appealed and there is a finding that the certified grievance committee acted unreasonably, unconscionably, or arbitrarily that its determination is subject to reversal. See Gov.Bar R. V(10)(D).
Scott J. Drexel, Disciplinary Counsel, for relator.
Mary L. Cibella, for respondent.
{¶ 58} While a majority of this court may believe that the CMBA got it wrong and that respondent should be sanctioned, that is not the question that we must answer. The only issue before us is whether a certified grievance committee’s determination not to file a formal complaint ever achieves finality and whether we should respect and give full faith and credit to that disposition when we later find that a formal complaint filed by disciplinary counsel alleged the same misconduct involving the same victim as a grievance that the committee already investigated and disposed of.
{¶ 59} Because the cornerstone of our disciplinary procedure is the filing, investigation, and disposition of “a grievance,” Gov.Bar R. V(9), and the grievances at issue here involve the same victim (the taxpayers of Cuyahoga County) and the same misconduct (the falsification of timesheets), I would give full faith and credit to the disposition of the grievance before the CMBA as required by the finality provision explicitly set forth in Gov.Bar R. V(10)(D), overrule the recommendation of the board, and grant respondent’s motion to dismiss this action. Therefore, I dissent.
Pfeifer and O’Donnell, JJ., concur in the foregoing opinion.

. This court independently reviews attorney-discipline cases. Cincinnati Bar Assn. v. Statzer, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. During that review in this case, it was discovered that disciplinary counsel never requested an extension of the investigative time limits and failed to complete the investigation within one year. See Gov.Bar R. V(9)(D). Gov.Bar R. V(9)(D)(3) provides that the time limits are not jurisdictional and that a grievance is subject to dismissal when “there has been an unreasonable delay and * * * the rights of the respondent to have a fair hearing have been violated.” Although Gov.Bar R. V(9)(D)(3) provides that an investigation that extends beyond one year is per se unreasonable, there is no evidence in the record to support a determination that that violation implicated respondent’s right to a fair hearing. Therefore, consideration of respondent’s underlying argument was required.