**MELLOTT, Estate of, In re.**

Probate Court, Belmont County.

No. 54909.   Decided January 20, 1953.

Cooper & Cooper, Matz & Cinque, Bellaire, for the Executors.
John J. Malik, City Solicitor, Bellaire, for the City of Bellaire.

Ralph A. Neff, Thornburg & Lewis, St. Clairsville, for the surviving spouse, Elizabeth N. Mellott.

## OPINION

By ALBRIGHT, J.

This is a proceeding brought by the surviving spouse of the decedent, under the provisions of §10509-89 GC, to purchase real estate and personal property at its appraised and market value.

The decedent, James F. Mellott died testate on August 10, 1952, leaving the applicant Elizabeth N. Mellott as his surviving spouse and sole heir at law. The decedent's will was duly admitted to probate on August 19, 1952, and on September 5, 1952, James W. Stewart and J. E. Giffin were appointed Executors of his estate. On November 5, 1952, the surviving spouse made her election not to take under the will of the decedent but to take under the law of descent and distribution, which entitled the widow to take one-half of the net estate under the provision of §10504-55 GC.

On October 28, 1952 the Executors filed their inventory and appraisement of said estate which was approved on November 11, 1952. The gross value of the estate was appraised at $522,179.91, and the net value of the estate after payment of debts and costs of administration is approximately $480,000.00.

On December 10, 1952, the surviving spouse filed her application in the Probate Court electing to take certain real estate and personal property listed in the inventory and appraisement at its appraised or market value in the approximate sum of $140,000.00. Among the assets of the estate, listed in the application of the spouse to purchase at its appraised value, were 400 shares of stock in the Union Savings Bank, Bellaire, Ohio, appraised at $13,200.00. The decedent at the time of his death was the owner of 1066 shares of the Union Savings Bank out of a total authorized issue of 3000 shares.

The executors of the estate and the City of Bellaire object to the surviving spouse being granted the right to purchase 400 shares of the 1066 shares of stock in the Union Savings Bank owned by the decedent, at its appraised value, claiming that all the 1066 shares of stock is specifically bequeathed under the terms of the testator's will.

**Sec. 10509-89 GC** provides in part as follows:

"The surviving spouse, if any, whether acting as executor or administrator, or not, shall have the right to purchase the following property, if left by the decedent and if not specifically devised or bequeathed."

The will of the testator, insofar as it relates to the surviving spouse and the stock he owned of the Union Savings Bank, Bellaire, Ohio, contains the following provisions:

ITEM II. Explanatory of the provisions of this, my Last Will and Testament and of gifts, bequests and devises contained herein and hereinafter set forth, I desire to make it clear that my wife, Elizabeth N. Mellott, and I each have ample properties and holdings, and it is the understanding between us that the estate of each of us should so stand as to be considered separate and apart from the estate of the other, without either claiming any special right in the estate of the other, except as provided in the Will of the other.

ITEM III. I give and bequeath to my beloved wife, Elizabeth N. Mellott, the sum of Twenty Thousand Dollars ($20,000.00) either in cash or in bonds belonging to my estate, at her election.

I also give and devise to my said wife all my interest in lands or lots formerly belonging to the Bellaire Land and Development Company in Pultney Township, lying West of the Fourth Ward in the City of Bellaire, Ohio.

The provisions hereinbefore made for my wife, Elizabeth N. Mellott, are intended to be in lieu of her dower interest and distributive share in my real estate and personal property and any and all other rights, interests, claims or exemptions which she might otherwise have in or against my estate, except her claim to a year's support in the sum of Five Thousand Dollars ($5,000.00); and such provisions are conditioned upon her formal relinquishment of such rights by election or otherwise; provided, however, that my said wife shall have the right to a year's support in the sum of Five Thousand Dollars ($5000.00), payable out of my estate.

In the event my said wife shall, for any reason, not elect to take under this, my Will, then the provisions hereinbefore made for her, subject to her claims at law upon the same shall become null and void, and I hereby give, devise and bequeath the same to my Trustees, hereinafter named, and their successors in trust, however, upon the trusts and for the objects and purposes herein set forth.

ITEM IX. All the rest, residue and remainder of my property, real and personal, which I may own or have the right to dispose of at the time of my deacease, I give and devise and

bequeath to said James W. Stewart and J. E. Giffin, of Bellaire, Ohio, and to their successors, in trust, however, upon the trust and for the objects and purposes following, to-wit:

Said trustees, or their successors in trust, shall hold, manage, and control as to real estate, to improve, lease, rent, sell exchange and convey the same, or any part thereof, for such rents and prices, and upon such terms and conditions as my Trustees, in their discretion, may deem best, including the power to lease for any term or terms, irrespective of the period of the trust; and as to the personal property to hold, control, sell, invest and re-invest the same, and to purchase any of the property or assets of the estate of my brother, William D. Mellott, deceased. Provided that all of such reinvestments of the funds and purchases of securities from my said brother's estate shall be in shares or stock of incorporated banks or investments that National Banks are now or may hereafter be permitted to make, or in stocks of known and demonstrated value that are offered for sale or about to be sold for less than their known or market value as my said Trustees may deem proper in their discretion, irrespective of any statutes or rules or practices of chancery courts now or hereafter in force, limiting the investment of trust funds; to execute and deliver all proxies, powers of attorney and agreements that they may deem necessary or advisable in administering said trust, and to compound, compromise, settle and adjust all claims and demands in favor of and against the trust estate, on such terms and conditions as they may deem best, provided that, if at any future time, in the opinion of my Trustees, it shall be proper so to do, my Trustees are hereby authorized and empowered to vote, consent to, carry out and consummate a consolidation or merger of The Union Savings Bank of Bellaire, Ohio, with First National Bank in Bellaire, Ohio, and to deposit, transfer and surrender all the shares of stock of both said banks, then owned by my said trust estate, for the purpose of consummating said consolidation or merger, and in lieu of said stock to accept shares of stock of said consolidated or merged institution and place the same in my said trust estate; and provided further, that it is my will and desire that said Trustees shall not otherwise sell, convert or dispose of the shares of stock of either of said banks, which I may own or have the right to dispose of at the time of my decease, except as hereinafter provided.

If the two banks shall have been merged or consolidated before the library building hereinafter provided for is constructed, then and in such case, all of said stock in said merged or consolidated institution may be sold and the in-

come from the proceeds of said sale may be applied to the construction and upkeep of said library building.

If a merger or consolidation of said banking institutions is not effected prior to the construction of the proposed library building, then and in such case the income from the Stock of the Union Savings Bank of Bellaire, Ohio, and from one hundred (100) shares of the stock of First National Bank in Bellaire, Ohio, shall be placed by said Trustees in the general trust fund, until said library is constructed and said income may then be used for the upkeep of said library building.

And provided further, that said Trustees are hereby directed to set aside shares of the First National Bank, in Bellaire, Ohio, of the par value of Two Thousand ($2,000.00) Dollars, or the proceeds from the sale thereof, if the same shall be sold in conformity with the other provisions of the Will, as to said stock, the income from which shall be used, insofar as necessary, for the upkeep of the the Mellott Burial Lot in Greenwood Cemetery at Bellaire, Ohio. The unused portion, if any, of said income may be transferred at each five (5) year period after my decease to the general purposes of this trust, as hereinbefore and hereafter set forth.

Said trustees may, in their discretion, use such part of my estate as may be necessary for the benefit of Minnie McNiece to the end that she may live in comfort during her lifetime.

Said Trustees shall set apart from said trust funds the sum of Five Thousand Dollars ($5,000.00) and more, if necessary, and from said fund shall pay for the necessary care and support of my aunt, Alice Myers; said payments to be made either to her or for her benefit monthly by my Executors and my said Trustees.

Said Trustees are hereby authorized, empowered and directed to erect, or cause to be erected, either in the City Park, located between Central Avenue and Thirty-fifth Street, in the City, to be not smaller than one hundred twenty (120) feet in depth by two hundred forty (240) feet in length, which shall be provided by said City and acceptable to said Trustees in their discretion, a free public library building, and to expend for the erection of said building an amount of money from my trust estate, other than from one hundred (100) shares of stock of said First National Bank in Bellaire, Ohio, and all of my said stock of The Union Savings Bank in Bellaire, Ohio, which when added to the amount of money which may be expended from the estate of my brother, William D. Mellott, deceased, for the same purpose, shall be fully adequate for the construction of a library building that will be a credit to the City of Bellaire, and in the construction of said building,

if it becomes necessary, all of the property and funds in said trust estate, except one hundred (100) shares of stock of said First National Bank, in Bellaire, Ohio, and all of the shares of Stock of The Union Savings Bank of Bellaire, Ohio, may be used for such purpose.

After the erection of said library building, or after the cost thereof is ascertained, said Trustees are further directed, authorized and empowered to erect, or cause to be erected, if the remaining trust funds in my estate and in the estate of my brother are sufficient, in the opinion of said Trustees to do so, excepting therefrom one hundred (100) shares of the stock of First National Bank in Bellaire, and all of the stock which I may own at the time of my decease in The Union Savings Bank of Bellaire, Ohio, provided said two (2) banks shall not have been theretofore merged or consolidated, a community center building, upon a site which shall also be provided by the City of Bellaire, and acceptable to my said Trustees, and to expend for the same such amount of money from my said trust estate which, when added to the amount of money which shall be available to be expended from the estate of my brother, William D. Mellott, deceased, for the same purpose, as will be necessary for said purpose; provided, however, that said Trustees may exercise their absolute discretion and have the power to determine the amount to be expended from my said trust for said community center building.

The furniture and equipment of said building and the books and papers for said library shall be furnished by taxes authorized by law, or by public subscription, or by private donation, other than from funds of my estate or the estate of my said brother.

It is further provided, however, that the site furnished for said public library building, in the event my said Trustees in their discretion decide to erect a community center building, shall be of sufficient dimensions for both buildings

Said library building, when completed, shall vest in and become the property of a board of library trustees designated by the City of Bellaire, Ohio, which board shall be authorized to render free library service for the use of all of the inhabitants of the County and be appointed in the manner provided by law, and said building shall thereafter be held, controlled, operated and maintained by said board, but shall not be used for any purpose other than as a free public library or reading room. Said community center building when completed, shall vest in and become the property of the City of Bellaire, Ohio, and shall thereafter be held, controlled, oper-

ated, maintained, and regulated by said City, but shall not be used for any purpose other than for public entertainment, recreation and community center purposes.

In the event the City of Bellaire, through its duly constituted officers, does not signify its intention of meeting the conditions herein set forth, pertaining to said library building, and/or said community center building within ten (10) years from the date of my death, unless the time be extended by my said Trustees in their discretion, then and in such case the provisions herein made for said library building shall become null and void. Said time, however, may not be extended for more than an additional ten (10) years by said Trustees.

The hereinbefore mentioned library building and community center building are to be considered as a memorial in the names of the following persons: Amos O. Mellott, Phoebe J. Mellott, William D. Mellott, A. E. and Allie M. Smalley, and J. F. and Elizabeth N. Mellott, provided further, however, if said library building and community center building shall be constructed, the remaining surplus from my estate and the income therefrom, other than the principal and income from said one hundred (100) shares of First National Bank in Bellaire, and all of the shares of the Union Savings Bank of Bellaire, Ohio, may be used at any time by my said Trustees for the remodeling of said library and community center building, in order to keep the same in the standards of the times and may further be expended and used by said Trustees in their discretion for the operation and running expenses of said public library and community center, or said Trustees may transfer the corpus of said remaining surplus, other than the above mentioned shares of said banks, to the Library Trustees and to the City of Bellaire, in such proportions as they may elect to be used for such purposes.

In the event the library building shall be constructed, the income from the one hundred (100) shares of stock of First National Bank in Bellaire, Ohio, and the income from the shares of stock belonging to my estate of the Union Savings Bank of Bellaire, Ohio, shall be paid by my said Trustees annually to the Board of Trustees of said library building to be used by said board for the upkeep of said building.

I further direct that if my said Trustees, in their discretion, shall deem it advisable so to do at any time, they are hereby authorized and empowered to transfer said one hundred (100) shares of stock in First National Bank in Bellaire, Ohio, and shares of stock of the Union Savings Bank of Bellaire, Ohio, belonging to my estate to the Trustees of said library, the

income from said stock to be used and expended by said Trustees for the repair, remodeling and upkeep of said library building.

The sole question is whether 400 shares of the Union Savings Bank Stock was "specifically bequested" in the testator's will.

The general rules with reference to the interpretation of ■ Wills are fully applicable in determining whether a legacy, in any particular instance, is to be treated as demonstrative, general, or specific. The cardinal rule is to ascertain and give effect to the intention of the testator as expressed in the language of the Will. The question is: "Did the testator intend to give the specific thing, or to limit the gift to the particular subject-matter? Or did he intend to give an amount of money in any event, and refer to the fund merely as a convenient means of payment?" **(O. Jur. Vol. 41, Page 866.)**

It is a rule of the Courts to construe legacies of a doubtful ■ nature as general or demonstrative, rather than specific; it being variously stated and variously said in this connection that the Courts are not inclined to favor specific legacies, that the presumption of intention is in favor of general legacies in the first instance, that the law leans against specific legacies and toward general ones, and that the legacies will be construed as specific only when the intention of the testator to make them such is clear and unmistakable. (57 Am. Jur. Page 940, Sec. 1406.)

A specific legacy has been defined as a gift of some specific ■ thing or some particular portion of the testator's estate which is so described by the testator's will as to distinguish it from other articles of the same general nature, as a gift of a particular thing or of money specified and distinguished from all things, and which, at the execution of the will, is owned by the testator, as of a horse, or a piece of plate, or of money in a purse, stocks of a corporation, and the like, and as something which a testator, identifying it by a sufficient description and manifesting an intention that it should be enjoyed in the State or condition indicated by that description, separates, in favor of a particular legatee, from the general mass of his personal estate. A specific devise or bequest is one which, according to the intent of the testator, is limited to the subject matter given. **(41 O. Jur. Wills, Sec. 738, Page 857.)**

The distinction between specific and general legacies is that ■ a specific legacy singles out the particular thing which the testator intends the donee to have, no regard being had to its value, while general legacies are payable out of the general assets, the chief element being the quantity or its value A

specific legacy differs from a general legacy in that it is not intended by the testator to be paid out of his estate generally, but is to be paid solely by delivering to the beneficiary the specific thing given by the will, as distinguished from a designated value generally and the like . . . **(41 O. Jur Wills, Sec. 742, Page 865,** Rote v. Warner, O. O. C. D. 536, **Shaw v. Shaw, 32 Oh Ap 168.)**

A specific legacy may be defined as a bequest of a particular individualized chattel, fund, or portion of the testator's personal estate, which is set apart from the balance of his property and which is differentiated from all other articles or funds of the same or a similar nature. It may be satisfied only by delivery of the specific object, fund, or portion designated, and not by the receipt of some equivalent in money or property. (57 Am. Jur. Wills. Sec. 1401.)

A general legacy is one which is designated primarily by quantity or amount and which may be satisfied out of the general assets of the testator, without necessity of delivering any particular chattel or fund to the legatee. . . The fundamental distinction between general and specific legacies, it has been said, it that the former may be satisfied out of the general assets of testator's estate without regard to any particular fund, thing or things, while the latter are gifts of particular specified things, or of the proceeds of sale of such things or a defined portion thereof. (57 Am. Jur. Wills, Sec. 1402, 149 A. L. R. 1063.)

The question of the effect of the designation of particular property in a residuary clause of a will is one testamentary construction and the general rules of testamentary construction should be kept in mind in considering this question. The cardinal rule of testamentary construction is to ascertain the intent of the testator and to give it effect. All other rules of construction are designed to that end and are subordinate to such intent when it is ascertained. The intention of the testator is to be gathered from the whole will. And effect is to be given to every word and clause of the will if possible. (128 A. L. R. 823, Shaw v. Shaw, 320 App 168.)

In the recent case of **Holmes** and **Hrobon (61 Abs 113)** the Court held: "The provision of Item V whereby the testator provided that the income from the laundry business should be paid to his wife for life is a specific legacy. The fact that this provision is found in a general residuary clause does not take away its character as a specific legacy. However, the question is one of the intention of the testator and his intention to give a specific legacy or devise, although it is given in a residuary clause to the same person who is the residuary

legatee, from the language used in designating particular property in a residuary clause, the testator's intention appears to be to make separate and distinct gifts, one of the designated property and the other of the residue, the courts will construe the legacy or devise of the designated property as specific."

The intention of the testator must be ascertained from the language used in the will, as applied to the subject-matter and read in the light of surrounding circumstances at the time of the execution thereof, and not with reference to the circumstances of the time of the death of the testator, except in so far as the latter are connected with the former. If the language of the will is plain and the meaning obvious, the Court cannot qualify or control the language by conjecture or doubt arising from extraneous facts. The testator must be presumed to have meant what he said. A Court will not disregard a plain provision of a will because of supposed advantages which might accrue to the estate from so doing. A Court will not cause a trust created by the testator to fail, such as by nullifying provisions of the Will creating the trust, or purposely causing the trust to end. (41 O. Jur. Sec. 468, p. 595.).

The use of the word "my" in reference to stock which is the subject of a bequest is convincing evidence of an intention to make the gift specific. (117 O. L. R. 805, Corham v. Chadwick.)

Applying the above rules, the Court is of the opinion that the testator has created a specific bequest of all the 1066 shares of stock that he owned in the Union Savings Bank, Bellaire, Ohio, and that it was his intention to "specifically bequeath" said stock, and has shown his intentions in a clear and unmistakable manner by the following references and provisions.

1. The intention of the testator to separate this stock from the balance of his personal property is clearly shown in paragraph 2 of Item IX, where there are detailed instructions as to voting for a consolidation or merger of the First National Bank and the Union Savings Bank and where it is specifically directed that the trustees cannot sell or dispose of the shares in these banks "except as hereinafter provided."

2. The intention is further shown in paragraph 3 providing that if there is a merger of the two banks then the stock may be sold and the income from the proceeds applied to the construction and upkeep of a library building.

3. In paragraph 4 if a merger is not effected then all of the income from all of the shares of the Union Savings Bank is to be placed by the trustees in the "general fund" until the

library is constructed and then the income may be used for upkeep.

4. The library building is authorized in paragraph 8 and specifically authorized in the expenditure of all of the balance in the trust estate, for the construction of a library "other than 100 shares of stock in First National Bank and all of my said stock of the Union Savings Bank," and further "except" those shares against the last clause of that paragraph.

5. It is provided in paragraph 9 that after the library is built, all of the remainder of his estate may be used for a community center building, excepting therefrom 100 shares of the Stock of First National Bank in Bellaire, and all of the stock which I may own at the time of my decease in the Union Savings Bank of Bellaire, Ohio.

6. It is further provided in paragraph 14, that if there is a surplus after the library and community center building have been constructed the remaining surplus may be used for remodeling and for running expenses, "excepting principal and income from said 100 shares of First National Bank in Bellaire, and all of the shares of the Union Savings Bank." And it is further provided in said paragraph that said surplus, "other than the above mentioned shares of stock" may be transferred to the library trustees and to the City of Bellaire.

7. It is provided in paragraph 15 that the income from the shares of these stocks shall be paid annually to the Board of Trustees of the Library building for upkeep of said building.

8. In paragraph 16, the trustees are authorized to transfer said shares to the trustees of the library to be used by said trustees for repair and upkeep of the library.

9. Other than the trusts set up for Mrs. B. W. Hopkins, the cemetery trust, Mrs. Minnie McNiece and Alice Myers, Item IX of the will, sets up three separate trusts. One for the library building for which any of the assets except the stocks in these banks may be used; one for the Community Center Building in which all of the assets may be used, except the stocks in these banks; and one for the upkeep of the library which is to be definitely the income from 100 shares of First National Bank stock and all of his stock in the Union Savings Bank.

The Court therefore finds and determines that the 1066 shares of Stock of the Union Savings Bank, Bellaire, Ohio, are specifically bequeathed personal property and that the surviving spouse is not entitled to purchase 400 shares of said stock at its appraised value; it is further ordered that the application of the spouse to purchase said 400 shares of stock of the Union Savings bank be and is hereby dismissed.