Pfeifer, J.
{¶ 1} Appellant, the Northeast Ohio Regional Sewer District (the “Sewer District”), seeks to implement a regional stormwater-management program. Appellees, political subdivisions and landowners within the Sewer District, argue and the court of appeals concluded that the Sewer District is not authorized to establish a stormwater-management program. We disagree and reverse the judgment of the court of appeals.
Background
{¶2} The Sewer District, a political subdivision of the state of Ohio, was formed in 1972 and includes as member communities all or parts of over 60 cities, villages, and townships in and around Cuyahoga County. In January 2010, the Sewer District adopted a plan to establish a regional stormwater-management program and a structure for fees to be charged to landowners within the Sewer District whose properties contain impervious surfaces. The Sewer District then filed an action in common pleas court against its member communities seeking a declaratory judgment that it had the authority to implement the regional stormwater-management program and to impose the fees. Some of those *388 member communities and several intervening landowners argued that the Sewer District lacked authority to implement the program and fees under R.C. Chapter 6119 and the Sewer District’s charter and that the fees were unconstitutional.
{¶ 3} In April 2011, the trial court declared upon a motion for partial summary judgment that the Sewer District had authority under R.C. Chapter 6119 and its charter to enact a regional stormwater-management program. The court of appeals reversed. It properly concluded that as a creature of statute, the Sewer District’s authority is limited by the statutory scheme that created it. 2013-Ohio-4186, 999 N.E.2d 181, ¶40 (8th Dist.). The court of appeals stated that
the purpose of a regional water and sewer district is for “either or both” of the following purposes: “(A) [t]o supply water to users within or without the district”; and “(B) [t]o provide for the collection, treatment, and disposal of waste water within and without the district.”
(Brackets sic.) Id. at ¶ 43, quoting R.C. 6119.01(A) and (B).
{¶ 4} The court of appeals concluded that although the statutory scheme “authorized the Sewer District to collect, treat, and dispose of waste water entering the sewer system,” it “does not authorize the District to implement a ‘stormwater management’ program.” Id. at ¶43 and 46. This conclusion depends in large part upon the court’s pronouncement that “[t]he term waste water necessarily means water containing waste.” Id. at ¶ 44, citing Reith v. McGill Smith Punshon, Inc., 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226 (1st Dist.).
{¶ 5} The trial court also concluded after a bench trial that the Sewer District is authorized by R.C. Chapter 6119 to charge fees to pay for the stormwatermanagement program. The court of appeals reversed, concluding that the fees were “not for the ‘use or service’ of a ‘water resource project.’ ”
{¶ 6} We granted the Sewer District’s discretionary appeal as to Proposition of Law No. I (asserting that the program and fees are authorized under R.C. Chapter 6119) and Proposition of Law No. II (asserting that the program and fees are authorized under the Sewer District’s charter). 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1216.
Analysis
{¶ 7} Despite the great interests at stake, the issues in this ease are exceedingly straightforward: (1) is the Sewer District’s regional stormwater-management program authorized by statute and by its charter? and (2) is the attendant fee structure authorized by statute and by the charter? We answer both questions in the affirmative.

*389
I. The regional stormwater-management program is authorized by statute and by the Sewer District’s charter

{¶ 8} There are many sound policy reasons to support or oppose the creation of the Sewer District’s regional stormwater-management program and its attendant fee structure. The various party and amicus briefs are testaments to this. Although we appreciate their substantive significance, they are not germane to the legal issues before us.
{¶ 9} The parties do not dispute that the Sewer District is a valid creature of statute, authorized by R.C. Chapter 6119. The Sewer District’s ability to create a regional stormwater-management program must, then, have its basis in the statutory scheme, which provides only two valid purposes for a regional water or sewer district. The district must “supply water,” which the Sewer District does not, or it must “provide for the collection, treatment, and disposal of waste water.” R.C. 6119.01.
{¶ 10} R.C. 6119.011(K) defines “waste water” as “any storm water and any water containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water.” Despite its plain language, the parties’ interpretations of this definition are radically different.
{¶ 11} Appellees argue, and the court of appeals concluded, that “[t]he term waste water necessarily means water containing waste.” 2013-Ohio-4186, 999 N.E.2d 181, ¶44. Appellees contend that the participial phrase “containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water” modifies the noun “any storm water” as well as the noun “any water,” which would mean that stormwater is only “waste water” when it is combined with sewage or pollutants.
{¶ 12} The definition provided in the statute is uncomplicated. See Youngstown Club v. Porterfield, 21 Ohio St.2d 83, 86, 255 N.E.2d 262 (1970) (“it is customary to give words their plain ordinary meaning unless the legislative body has clearly expressed a contrary intention”). In our view, the statute plainly indicates that “waste water” comes in two forms. One is “any storm water.” The other is “any water containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water.” There is no other plausible reading of the definition.
{¶ 13} The definition sought by appellees renders the words “any storm water and” meaningless. But the words “any storm water and” are in the statute, and it is well known that our duty is to “give effect to the words used, not to delete words used or to insert words not used.” Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm., 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969); see also State ex rel. Carmean v. Hardin Cty. Bd. of Edn., 170 Ohio St. 415, 422, 165 N.E.2d *390 918 (1960) (“It is axiomatic in statutory construction that words are not inserted into an act without some purpose”).
{¶ 14} We conclude that the term “any storm water” was not included in the statute to be mere surplusage. The Sewer District has the authority to collect, treat, and dispose of “waste water.” We hold that R.C. 6119.011(K) identifies two types of “waste water,” one of which is “any storm water.” Accordingly, we conclude that the regional stormwater-management program falls within the statutory authority of the Sewer District.
{¶ 15} The charter creating the Sewer District states, “The purpose of the District shall be the establishment of a total waste water control system for the collection, treatment and disposal of waste water within and without the District * * In re Establishment of Cleveland Regional Sewer Dist., Cuyahoga C.P. No. SD 69411 (June 15, 1972), Exhibit A, ¶ 4. This authority includes “overall control of all waste water collection systems in the area.” Id. Given the statutory definition of “waste water,” as discussed above, it is clear that the charter governing the Sewer District authorizes it to implement a regional stormwater-management program. Moreover, the charter also states, “The District will plan, finance, construct, operate and control waste water treatment and disposal facilities, major interceptor sewers, all sewer regulator systems and devices, weirs, retaining basins, storm water handling facilities, and all other water pollution control facilities of the District.” Id. at ¶ 5(c). This charter provision specifically authorizes the Sewer District to build and operate stormwater-handling facilities.

II. The Sewer District is authorized by statute and by its charter to assess fees to implement the regional stormwater-management program

{¶ 16} Having determined that the Sewer District is authorized to implement a regional stormwater-management program, we must now determine whether the district has the authority to charge fees to pay for that program. R.C. 6119.09 provides that “[a] regional water and sewer district may charge, alter, and collect rentals or other charges * * * for the use or services of any water resource project or any benefit conferred thereby.” R.C. 6119.011(G) defines a “water resource project” as
any waste water facility or water management facility acquired, constructed, or operated by or leased to a regional water and sewer district or to be acquired, constructed, or operated by or leased to a regional water and sewer district under this chapter * * *.
{¶ 17} “Waste water facilities” means
*391 facilities for the purpose of treating, neutralizing, disposing of, stabilizing, cooling, segregating, or holding waste water, including, without limiting the generality of the foregoing, * * * facilities for the temporary or permanent impoundment of waste water, both surface and underground, and storm and sanitary sewers and other systems, whether on the surface or underground, designed to transport waste water * * *.
R.C. 6119.01KL).
{¶ 18} “Water management facilities” means
facilities for the purpose of the development, use, and protection of water resources, including, without limiting the generality of the foregoing, facilities for water supply, facilities for stream flow improvement, dams, reservoirs, and other impoundments, * * * stream monitoring systems, facilities for the stabilization of stream and river banks, and facilities for the treatment of streams and rivers * * *.
R.C. 6119.01KM).
{¶ 19} Appellees argue that the Sewer District cannot charge the fees permitted for a water-resource project because the Sewer District does not own or operate the various parts of the current stormwater-management system. See R.C. 6119.011(G). But the statutory definition of “water resource project” includes a facility that is “to be acquired, constructed, or operated” by the Sewer District. Id. The Sewer District may therefore charge fees for this purpose under R.C. 6119.09.
{¶ 20} It is impossible to say at this time that the Sewer District will not use the fees to acquire, construct, or operate a facility that will be part of the regional stormwater-management system that it is authorized to implement. It might not, and if it does not, appellees will be within their rights to challenge the Sewer District’s collection of fees that did not go toward the use for which they were statutorily authorized. But today is not that day.
{¶ 21} As stated above, the Sewer District’s charter instructs it to, among other things, “finance * * * waste water treatment and disposal facilities [and] storm water handling facilities * * In re Establishment of Cleveland Regional Sewer Dist., Cuyahoga C.P. No. SD 69411, Exhibit A, ¶ 5(c)(1). The charter provides that “[a]ny projects not financed through the Ohio Water Development Authority would be financed in such a manner as may be deemed appropriate by the Board of Trustees.” Id. at ¶ 5(e)(3). We conclude that this broad language *392 encompasses the assessing of fees to pay for a stormwater-management system and that the fees are therefore authorized by the charter.
{¶ 22} Because we conclude that the Sewer District has authority to implement a regional stormwater-management program and to charge fees for that program, we reverse the judgment of the court of appeals.
Judgment reversed.
O’Connor, C.J., and Lanzinger and O’Neill, JJ., concur.
French, J., concurs in part and dissents in part.
O’Donnell and Kennedy, JJ., dissent.