[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Kramer,* **Slip Opinion No. 2016-Ohio-5734.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5734

DISCIPLINARY COUNSEL *v*. KRAMER.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Kramer,* **Slip Opinion No. 2016-Ohio-5734.**]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Relator had authority to investigate anonymous grievance against respondent— Conditionally stayed one-year suspension.*

(No. 2015-2000—Submitted March 9, 2016—Decided September 13, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-104.

_____

**O'CONNOR, C.J.**

{¶ 1} Respondent, Roger Stephen Kramer of Shaker Heights, Ohio, Attorney Registration No. 0019210, was admitted to the practice of law in Ohio in 1977. On December 14, 2015, the Board of Professional Conduct filed its report recommending that Kramer be suspended from the practice of law in Ohio for one

year, with the suspension stayed in its entirety. Relator, disciplinary counsel, requests that we reject the board's recommendation and instead impose a one-year actual suspension. Kramer requests that any suspension ordered be stayed in its entirety and that the court consider certain issues that "have broad impact on the entire disciplinary system in Ohio." We adopt the board's recommendation.

## RELEVANT BACKGROUND

{¶ 2} In May 2011, the Cuyahoga County Council appointed Kramer, a former prosecutor, to be a hearing officer at the county's board of revision. As a hearing officer, Kramer was a county employee.

{¶ 3} In May 2013, the Cuyahoga County Office of the Inspector General informed the certified grievance committee of the Cleveland Metropolitan Bar Association ("CMBA") that an investigation of Kramer had revealed discrepancies between his time sheets and his actual hours worked. The inspector general's report, dated September 4, 2012, determined that there was "sufficient evidence to establish reasonable grounds to believe" that Kramer violated county rules, regulations, and/or policies regarding his work hours and time sheets by some 129 discrepancies between his timesheet and parking garage records. The report stated that Kramer was aware of the fact that he was paid for work he did not perform and acknowledged that he owed money to Cuyahoga County as a result. The inspector general recommended that the matter be referred to the county executive and human-resources department for potential disciplinary action.

{¶ 4} Prior to the issuance of the inspector general's report but pending the results of the investigation, Kramer was placed on administrative leave without pay. After release of the report, Kramer resigned from his position at the board of revision on September 14, 2012. In his resignation letter, Kramer denied any violation of law and asserted that a review of the documents provided to his counsel "reveal a net discrepancy of six hours."

2

**{¶ 5}** The committee exercised its discretion and decided not to file a complaint against Kramer. By letter dated October 24, 2013, the committee notified the inspector general of the dismissal, stating, "The Committee believes Mr. Kramer has already been sanctioned by the loss of his employment and that further disciplinary action is not warranted." The letter also informed the inspector general how to obtain review of the committee's determination pursuant to Gov.Bar R. V(4)(I)(5) (now Gov.Bar R. V(10)(D)). The inspector general declined to pursue further review.

**{¶ 6}** *Prior* to the committee's dismissal of the grievance, a separate anonymous grievance was submitted to disciplinary counsel. According to disciplinary counsel, the grievance was received on October 17, 2013, and signed by a "citizen and employee of Cuyahoga County." Neither the inspector general's grievance to the committee nor the anonymous grievance submitted to disciplinary counsel is included in the record. However, disciplinary counsel described the contents of the grievance as follows:

> In the anonymous grievance, the grievant stated that he or she is employed by Cuyahoga County and "fear[s] that my employment might be put in jeopardy by reporting this matter." Attached to the anonymous grievant's letter was a copy of the September 4, 2012 Report of Investigation prepared by the Cuyahoga County Agency of Inspector General. In the closing paragraph of his or her grievance, the grievant stated that "I bring this to your attention because I believe it is important to the legal profession and to citizens of Cuyahoga County that misconduct be properly reviewed and appropriate consequences result to insure [sic] integrity in public life and in the legal profession."

**{¶ 7}** In November 2013, according to disciplinary counsel, he sent a letter of inquiry to Kramer asking him to reply to the information contained in the inspector general's report. In response, Kramer's counsel informed disciplinary counsel that the CMBA had already been referred the issue and dismissed a related grievance. After receiving this information, disciplinary counsel requested a copy of the CMBA's file on Kramer and pursued an investigation that, by disciplinary counsel's description, "significantly exceeded the scope of the Inspector General's investigation."

**{¶ 8}** In December 2014, disciplinary counsel filed a formal complaint with the Board of Commissioners on Grievances and Discipline (now known as the Board of Professional Conduct) alleging that Kramer's conduct regarding his timekeeping violated the Rules of Professional Conduct—specifically, Prof.Cond.R. 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (conduct prejudicial to the administration of justice).

**{¶ 9}** Kramer answered the complaint and moved to dismiss, arguing that the committee's dismissal of the prior grievance should be dispositive of the matter. On April 9, 2015, a three-member panel of the board denied the motion to dismiss, concluding that "[w]hile the first grievance filed by the inspector general arises out of the same set of facts and circumstances as the grievance that gave rise to the present complaint, nothing in Gov.Bar R. V precluded the filing of a separate grievance by a different grievant." Specifically, the panel found:

> CMBA declined to file a complaint based on its view that the allegations were of the nature of an employment dispute and did not determine whether any conduct of [Kramer] constituted a violation of the Rules of Professional Conduct. On the other hand, the Disciplinary Counsel independently investigated a grievance filed

by someone other than the Cuyahoga County Inspector General and discovered facts not reviewed or considered by the CMBA.

{¶ 10} In August 2015, the panel held a formal hearing on the complaint. On December 14, 2015, the board considered the matter and adopted the panel's findings of fact, conclusions of law, and recommendation that Kramer be suspended from the practice of law in Ohio for one year, stayed in its entirety.

{¶ 11} Disciplinary counsel objects to the board's recommendation and requests an actual suspension of one year. Kramer requests that any suspension be stayed in its entirety and that the court consider addressing issues that, he asserts, have not been addressed in prior disciplinary decisions. One of these issues is whether a dismissal of a grievance by a certified grievance committee is final if not appealed and, relatedly, whether another disciplinary agency must give the prior dismissal full faith and credit.

## MISCONDUCT

{¶ 12} After Kramer had been employed for approximately one year as a board of revision hearing officer, his supervisor, who was responsible for approving Kramer's timesheets, was replaced. Kramer's new supervisor requested that the Cuyahoga County inspector general audit her department based on concerns that her predecessor was too lax and had allowed time theft. The audit revealed two employees who had misreported their time, including Kramer. Specifically, the report revealed 129 discrepancies between Kramer's parking-garage activity and the times he had reported on his timesheets. The inspector general later testified that Kramer admitted to "lying on [his] timesheet" when she met with Kramer during her investigation. Kramer testified that he "may have" made the admission but could not recall.

{¶ 13} Disciplinary counsel's investigation covered a broader time period than the inspector general's report and revealed additional discrepancies in

Kramer's timesheets. His investigation also revealed that Kramer misreported time by reporting nine hours worked when he had worked only eight (but worked through lunch) even though this was a prohibited practice.

{¶ 14} In his testimony, Kramer admitted to timekeeping "inaccuracies" and "mistakes," including reporting the times he had worked through lunch without first informing his supervisor that he was doing so. Kramer further testified that these inaccuracies and mistakes "were wrong."

{¶ 15} Ultimately, the panel found that Kramer's testimony regarding the timekeeping discrepancies was not credible and also found that his conduct "amounted to taking county resources without completing the work."

## SANCTION

{¶ 16} The board concluded that Kramer's failure to acknowledge to the panel the wrongful nature of his conduct dictated a stayed one-year suspension from the practice of law. Disciplinary counsel filed objections to the board's report in this court, asserting that the overwhelming documentary evidence along with Kramer's admission of misconduct to the inspector general establish that his testimony, which the board characterized as "not credible," was false, deceptive, and intended to exculpate himself from discipline. Accordingly, disciplinary counsel asserts, the imposition of a one-year actual suspension from the practice of law is appropriate.

{¶ 17} There can be no dispute that some discipline is warranted here. Kramer violated Prof.Cond.R. 8.4(c) and (d) by knowingly falsifying his public-employee time records. "Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers." Prof.Cond.R. 8.4, Comment 5. The board's finding that Kramer failed to acknowledge to the panel the wrongful nature of his conduct, instead claiming

ignorance of the timekeeping rules and a lack of culpable intent, is particularly concerning.

**{¶ 18}** Typically, misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law unless there is significant mitigating evidence to support a departure from that principle. *See Disciplinary Counsel v. Potter*, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307, ¶ 9-11 (absence of a prior disciplinary record, efforts to rectify the consequences of the misconduct, full cooperation in the investigation including self-reporting, and evidence of good character and reputation apart from the charged misconduct sufficient to stay 12-month suspension for violating fiduciary duty as the executor of an estate); *Disciplinary Counsel v. Niermeyer*, 119 Ohio St.3d 99, 2008-Ohio-3824, 892 N.E.2d 434, ¶ 12-13 (absence of prior misconduct, cooperation in the disciplinary process including self-reporting, acceptance of responsibility for misconduct, and evidence of good character and reputation sufficient to stay 12-month suspension for altering a document to make it appear that it had been timely filed).

**{¶ 19}** Here, the board found as mitigating factors the absence of a prior disciplinary record, attestations from Kramer's peers and colleagues regarding his good character, and imposition of other penalties or sanctions—namely, Kramer's forced resignation. *See* Gov.Bar R. V(13)(C)(1), (5), and (6). In addition, the board noted Kramer's willing participation in the disciplinary process. *See* Gov.Bar R. (V)(13)(C)(4).

**{¶ 20}** As aggravating factors in this case, the board found the presence of a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and Kramer's refusal to acknowledge to the panel the wrongful nature of his misconduct. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (7). Although the board found that Kramer's testimony about his timekeeping was not credible, the board did not find that it was "false and deceptive" as disciplinary counsel contends. And

although Kramer's misconduct was repetitive, it was limited to his timekeeping practice. Finally, despite Kramer's characterization of his misconduct as "mistakes" and as "[s]loppy bookkeeping," he has recognized that the misreporting of his time was wrong. Consideration of these factors persuades us that Kramer is unlikely to commit future misconduct. And the primary purpose of the disciplinary process is to protect the public. *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975).

**{¶ 21}** Thus, we conclude that the board's recommendation of a one-year suspension, fully stayed, is warranted here.

### RULEMAKING AND THE DISMISSAL OF A GRIEVANCE

**{¶ 22}** Initially, Kramer requests that the court determine whether a dismissal by a certified grievance committee that is not appealed by the grievant should become final and be given full faith and credit by another disciplinary agency. In other words, Kramer asks this court to address whether disciplinary counsel had the authority to investigate and pursue disciplinary action on the separate, anonymous grievance.

**{¶ 23}** Article IV, Section 5 of the Ohio Constitution states that the Supreme Court "shall make rules governing the admission to the practice of law and discipline of persons so admitted." Article IV, Section 5(B). "We have previously held that the foregoing constitutional provision[ ] grant[s] plenary rulemaking authority to the Supreme Court, which authority is necessary for a uniform, effective governance of the practice of law in this state." *Melling v. Stralka*, 12 Ohio St.3d 105, 106, 465 N.E.2d 857 (1984).

**{¶ 24}** Under that authority, this court has promulgated the Rules for the Government of the Bar of Ohio, including Rule V, which sets forth the disciplinary procedure governing the practice of law. Gov.Bar R. V(2)(A) describes the exclusive jurisdiction of the Board of Professional Conduct regarding grievances alleging attorney misconduct:

### Section 2. Jurisdiction and powers of the board

**(A)** ***Exclusive jurisdiction.*** *Except as otherwise expressly provided in rules adopted by the Supreme Court*, all grievances involving alleged misconduct by judicial officers or attorneys, * * * proceedings for the discipline of judicial officers, attorneys, persons under suspension or on probation, and proceedings for the reinstatement to the practice of law shall be brought, conducted, and disposed of in accordance with the provisions of this rule.

(Emphasis added.) The rules provide that the board shall appoint a disciplinary counsel, who, among other duties, investigates allegations of misconduct. Gov.Bar R. V(4)(A). Thus, if we were to find that a limitation on disciplinary counsel's authority to investigate a grievance exists, that limitation must be "expressly provided" by the rules the court has promulgated. If it is not, the limitation is one that must be introduced and vetted through the rulemaking process, not made by judicial declaration.

{¶ 25} Gov.Bar R. V(5)(B) provides that a board-certified grievance committee of any local bar association can investigate misconduct by an attorney in the geographic area served by that association. Gov.Bar R. V(9)(C)(1) further provides as follows:

The Office of Disciplinary Counsel or a certified grievance committee shall review and may investigate a grievance that alleges facts that, if substantiated, would constitute misconduct by a judicial officer or attorney * * *. The Office of Disciplinary Counsel and a

certified grievance committee *shall review and may investigate any matter filed with it or that comes to its attention * * *.*

(Emphasis added.) In other words, disciplinary counsel and the certified grievance committees each enjoy broad authority to review and investigate any grievance that comes to his or their attention.

{¶ 26} Pursuant to that authority, both disciplinary counsel and a certified grievance committee may exercise discretion to dismiss an allegation of misconduct, Gov.Bar R. V(9)(C)(2), or pursue disciplinary action via a complaint, Gov.Bar R. V(9)(C)(1). If a certified grievance committee determines that a complaint is not warranted, a grievant who is dissatisfied with that determination "may secure a review of the determination by filing a written request with the director of the Board within fourteen days after the grievant is notified of the determination." Gov.Bar R. V(10)(D).

{¶ 27} In short, if a grievance investigation does not result in a formal disciplinary proceeding against the attorney, the rules specifically provide an appeal procedure for the grievant. However, the existence of an appeal process has no bearing on the initial investigation of a grievance, and no language limits the investigation as long as the grievance alleges facts that, if substantiated, would constitute attorney misconduct.

{¶ 28} Regardless of whether the grievances against Kramer alleged the same misconduct, nothing in the rules currently limits the authority of disciplinary counsel to investigate a grievance that alleges attorney misconduct. To the contrary, Gov.Bar R. V(9)(C) specifically requires disciplinary counsel to review *any matter* that comes before it and authorizes it to investigate any matter.

{¶ 29} The dissent erroneously states that "[b]y implication, the lead opinion asserts that this court must allow multiple proceedings in connection with the same alleged misconduct involving the same victim unless and until a new rule

is adopted." Dissenting opinion at ¶ 51. The dissent also states that "[p]ursuant to the lead opinion, taken to its logical conclusion, a grievance would never achieve finality." *Id.* at ¶ 52. By these statements, the dissent attempts to obfuscate our straightforward analysis. This reading of our decision is based on the dissent's own misinterpretation of the term "grievance" and its refusal to recognize the existence of multiple grievances here.

**{¶ 30}** Indeed, the dissent's distortion of our decision is based on a mischaracterization of the facts and the rules. Quite simply, nothing in the rules precludes disciplinary counsel's review and investigation of the second grievance that led to the board's disciplinary recommendation in this case. Kramer and the dissenting justices essentially request that the Rules for the Government of the Bar be revised. To do so, the court must follow its rulemaking procedures pursuant to its constitutional authority to "make rules governing the admission to the practice of law and discipline of persons so admitted." Ohio Constitution, Article IV, Section 5(B). And any change would not affect our decision today, which is decided based on the current status of the rules.

**{¶ 31}** Although the Ohio Constitution does not require legislative review of rules governing the discipline of attorneys, we follow a rulemaking procedure to promulgate new and amend existing Rules for the Government of the Bar. This process includes public notice, time for public comment and input from stakeholders such as interested committees or task forces, and a process for the justices to consider public comments received and proposed changes before final approval.

**{¶ 32}** Should the members of the bench and bar determine it prudent to pursue a rule or rule amendment regarding the finality of a grievance investigation when multiple grievances are submitted regarding attorney or judicial misconduct, such a change should proceed through this court's rulemaking process. Any change to the rules—and particularly those (like that which Kramer and the dissenting

justices request) that are of great import to the public—should not be done without completing our longstanding process.

{¶ 33} Lawyers on the "qui vive" pursuant to the dissent's cry are no doubt aware that judicial decision-making based on the current status of the rules is required for the uniformity, consistency, and predictability that are hallmarks of an independent judiciary. The dissent attempts to frame its indefensible stand as an interpretation of the rules, but it reads into the rules a limitation that does not exist. The dissent's approach circumvents the stability inherent in the consistent application of the Rules of Professional Conduct on a case-by-case basis. This does our profession no good.

{¶ 34} Because the rules, as they exist today, do not restrict disciplinary counsel's authority to investigate the anonymous grievance that is the basis of this disciplinary action, nothing precludes the imposition of the board-recommended sanction here.

### CONCLUSION

{¶ 35} For these reasons, we find against relator and adopt the recommendation of the board. Accordingly, Roger Stephen Kramer is suspended from the practice of law in Ohio for one year, with the suspension stayed in its entirety on the condition that he engage in no further misconduct. If Kramer fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire one-year suspension. Costs are taxed to Kramer.

Judgment accordingly.

LANZINGER and O'NEILL, JJ., concur.

FRENCH, J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion joined by PFEIFER and O'DONNELL, JJ.

_____

**KENNEDY, J., dissenting.**

{¶ 36} I dissent. Lawyers across Ohio, be on the qui vive! Certified grievance committees be damned! Like the sinners in Dante Alighieri's Canto VII of the *Divine Comedy: Inferno*, the lead opinion's interpretation of our rules would subject members of the Ohio bar to the prospect of multiple disciplinary proceedings in connection with the same alleged misconduct involving the same alleged victim.

{¶ 37} Because the cornerstone of our disciplinary procedure is the filing, investigation, and disposition of "a grievance," Gov.Bar R. V(9), and the grievances at issue here involve the same victim (the taxpayers of Cuyahoga County) and the same misconduct (the falsification of timesheets), I would give full faith and credit to the disposition of the grievance before the Cleveland Metropolitan Bar Association ("CMBA") as explicitly required by the finality provision set forth in Gov.Bar R. V(10)(D), overrule the recommendation of the board, and grant the motion filed by respondent, Roger Kramer, to dismiss this action. Therefore, I dissent.

{¶ 38} The lead opinion recasts respondent's argument as a challenge to the investigative authority of disciplinary counsel. But respondent's argument actually focuses on the question whether finality attaches to a grievance after a certified grievance committee investigates the grievance and a majority of that committee votes not to file a formal complaint. Construing the provisions of Gov.Bar R. V(9) and (10) together, the answer to that question is yes.

{¶ 39} This is a question of first impression, and because we have not had occasion to interpret these particular Rules for the Government of the Bar, there is scant relevant case law. However, when interpreting other administrative rules in past cases, we have applied our rules of statutory construction. *See, e.g.*, *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54, 386 N.E.2d 1107 (1979); *McFee v. Nursing Care Mgt. of Am., Inc.*, 126 Ohio St.3d 183, 2010-

Ohio-2744, 931 N.E.2d 1069, ¶ 27. Therefore, our role in this case is to apply traditional rules of statutory construction and construe the applicable rules together, harmonizing them to give full effect to each provision. *See State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 294, 649 N.E.2d 1205 (1995).

**{¶ 40}** By failing to do so, the lead opinion reaches a conclusion that is contrary to the intention distinctly reflected in our rules—i.e., that following an investigation, a grievance achieves finality 14 days after a certified grievance committee decides not to file a formal complaint and an appeal is not filed. Gov.Bar R. V(10)(D).

**{¶ 41}** Focusing on the identity of the anonymous grievant in this case, the panel baldly asserted that the anonymous grievance was "filed by someone other than the Cuyahoga County Inspector General," who filed the grievance investigated by the CMBA, and that "nothing in Gov.Bar R. V precluded the filing of a separate grievance by a different grievant." The board adopted the panel's reading of the rules and concluded that since the inspector general was the source of the grievance before the CMBA and the source of the grievance before relator was anonymous, "it is likely there are two different grievants." The lead opinion tacitly relies on this speculation and accepts the board's reasoning by restating the panel's bald assertion.

**{¶ 42}** However, an overview of the rules establishes a systematic framework for the filing, investigation, and disposition of "a grievance." Gov.Bar R. V(9). The identity of the grievant is not relevant.

**{¶ 43}** Gov.Bar R. V(9)(C) specifically establishes the broad power of a local certified grievance committee to investigate a grievance. In conjunction with the controlling use of the term "grievance," Gov.Bar R. V(9) establishes that the focal point of an investigation is the allegation of misconduct. See Gov.Bar R. V(9)(B) and (C). Conversely, the only other reference in Gov.Bar R. V(9) to a

14

"grievant" concerns the right of a grievant to receive notice of a "potential right to an award" from the Lawyers' Fund for Client Protection. Gov.Bar R. V(9)(F).

{¶ 44} Our rules do not define the term "grievance" or "grievant." Giving these terms their plain and ordinary meaning, *see Northeast Ohio Regional Sewer Dist. v. Bath Twp.*, 144 Ohio St.3d 387, 2015-Ohio-3705, 44 N.E.3d 246, ¶ 12, "grievance" is defined as "[a]n injury, injustice, or wrong that potentially gives ground for a complaint," *Black's Law Dictionary* 818 (10th Ed.2014). In the past, we have used the word "grievance" to mean a complaint alleging misconduct. *See Columbus Bar Assn. v. Troxell*, 129 Ohio St.3d 133, 2011-Ohio-3178, 950 N.E.2d 555, ¶ 12.

{¶ 45} Typically used in an employment-law context, "grievant" is defined as "[a]n employee who files a grievance and submits it to the grievance procedure outlined in a collective-bargaining agreement." *Black's Law Dictionary* 818 (10th Ed.2014).

{¶ 46} The distinction of use between the terms "grievance" and "grievant" in Gov.Bar R. V(9) continues in Gov.Bar R. V(10), which controls the filing of a complaint. In Gov.Bar R. V(10), the term "grievance" is used in conjunction with the terms "allegation" or "complaint," *see* Gov.Bar R. V(10)(A) and (C), while the term "grievant" is used exclusively in connection with a grievant's right to receive notice of a certified grievance committee's intent not to file a complaint and a grievant's right to file an appeal from that decision, see Gov.Bar R. V(10)(C) and (D). Explicit in Gov.Bar R. V(10) is that following an investigation, a grievance will achieve finality. *See* Gov.Bar R. V(10)(C) and (D).

{¶ 47} If a grievance is reviewed and investigated by *disciplinary counsel* and *disciplinary counsel* disposes of the grievance by declining to file a formal complaint, the grievant has the right to notice of that disposition but no right to review by the board. *See* Gov.Bar R. V(10)(C) and (D). In contrast, if after a review and investigation a majority of a *certified grievance committee* votes to

dispose of the grievance by declining to file a formal complaint, then the grievant is entitled to notice and the right to file an appeal with the board within 14 days, and that appeal is reviewed pursuant to an abuse-of-discretion or error-of-law standard. Gov.Bar R. V(10)(B) through (D).

**{¶ 48}** Construing these provisions together in a manner that gives full effect to each, when a *certified grievance committee* has disposed of a grievance by declining to file a formal complaint, that grievance achieves finality after 14 days in the absence of an appeal. Any other construction of these rules would render meaningless the time limits imposed by Gov.Bar R. V(9)(D) on the investigation of grievances, the notice requirements imposed by Gov.Bar R. V(10)(C) following a certified grievance committee's determination not to file a complaint, and the grievant's right to review and the standard of review set forth in Gov.Bar R. V(10)(D).

**{¶ 49}** Disciplinary counsel and the lead opinion both emphasize that Gov.Bar R. V(9)(C)(1) authorizes disciplinary counsel to review and investigate any grievance or matter brought to his attention. Gov.Bar R. V(9)(C)(1) does grant this authority to disciplinary counsel, but the rule does not explicitly recognize the finality of a certified grievance committee's determination not to file a complaint under Gov.Bar R. V(10)(D). Moreover, Gov.Bar R. V(10)(D) does not explicitly acknowledge disciplinary counsel's authority under Gov.Bar R. V(9)(C)(1) to investigate any grievance. Therefore, these two provisions conflict.

**{¶ 50}** The rules of statutory construction provide that " 'where a statute couched in general terms conflicts with a specific statute on the same subject, the latter controls.' " *State v. Taylor*, 113 Ohio St.3d 297, 2007-Ohio-1950, 865 N.E.2d 37, ¶ 12, quoting *Humphrys v. Winous Co*., 165 Ohio St. 45, 48, 113 N.E.2d 780 (1956). Therefore, the specific finality provision of Gov.Bar R. V(10)(D) controls over the more general provision in Gov.Bar R. V(9)(C) granting investigatory authority to disciplinary counsel.

**{¶ 51}** By implication, the lead opinion asserts that this court must allow multiple proceedings in connection with the same alleged misconduct involving the same victim unless and until a new rule is adopted. Nonsense. All we need to do is to give effect to the intention clearly reflected in our existing rules. *See Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 19 (in statutory construction, the primary rule is to give effect to the intention of the legislature). To that end, while we liberally construe the provisions of Gov.Bar R. V "for the protection of the public, the courts, and the legal profession," *Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 34, we should refrain from a construction that produces an unreasonable or absurd result, *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 28. We have long held that the disciplinary process "is neither a criminal nor a civil proceeding," *In re Judicial Campaign Complaint Against Carr*, 76 Ohio St.3d 320, 322, 667 N.E.2d 956 (1996), and that "[t]he standards of due process in such proceedings are not those in a criminal proceeding," *Ohio State Bar Assn. v. Illman*, 45 Ohio St.2d 159, 162, 342 N.E.2d 688 (1976), but until today we have never declared that a determination by a certified grievance committee not to file a formal complaint after review and investigation of a grievance lacks finality. The lead opinion's declaration renders meaningless Gov.Bar R. V(10)(C) and (D) and the broad authority that the lead opinion proclaims a certified grievance committee shares with disciplinary counsel to review and investigate grievances.

**{¶ 52}** Motivated by the belief that "some discipline is warranted," lead opinion at ¶ 17, the author and joiners of the lead opinion offer in support of their desired outcome an analysis that is unnecessary " 'to protect the public, the courts and the legal profession,' " *Disciplinary Counsel v. Dann*, 134 Ohio St.3d 68, 2012-Ohio-5337, 979 N.E.2d 1263, ¶ 20 (noting the purpose of a disciplinary sanction), quoting *In re Disbarment of Lieberman*, 163 Ohio St. 35, 41, 125 N.E.2d 328

(1955).  Pursuant to the lead opinion, taken to its logical conclusion, a grievance would never achieve finality: even *disciplinary counsel's* determination not to file a formal complaint under Gov.Bar R. V(10)(C), which is not subject to review, would be subject to reinvestigation by a certified grievance committee, see Gov.Bar R. V(9)(C)(1).

{¶ 53} This interpretation would permit the repeated filing of a grievance with both disciplinary counsel and the certified grievance committee, and—depending on who reviews the incoming grievance, who disciplinary counsel happens to be, and the composition of the committee—a new investigation may arise and ultimately lead to a formal complaint.  Meanwhile, the subject of a grievance would be left in perpetual limbo.  This interpretation also would permit a grievant to circumvent the appellate process and would supplant the abuse-of-discretion and error-of-law standards of review with a de novo review standard.  *See* Gov.Bar R. V(10)(C) and (D).

{¶ 54} In this case, respondent underwent an investigation by the CMBA that lasted five months.  After being advised that the matter was being dismissed without the filing of a formal complaint, he was notified by a letter dated November 19, 2013, that an investigation into the same misconduct involving the same victim was beginning again.  One year and 26 days later, disciplinary counsel filed a formal complaint.[1]

---

[1] This court independently reviews attorney-discipline cases.  *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 117, ¶ 8.  During that review in this case, it was discovered that disciplinary counsel never requested an extension of the investigative time limits and failed to complete the investigation within one year.  *See* Gov.Bar R. V(9)(D).  Gov.Bar R. V(9)(D)(3) provides that the time limits are not jurisdictional and that a grievance is subject to dismissal when "there has been an unreasonable delay and * * * the rights of the respondent to have a fair hearing have been violated."  Although Gov.Bar R. V(9)(D)(3) provides that an investigation that extends beyond one year is per se unreasonable, there is no evidence in the record to support a determination that that violation implicated respondent's right to a fair hearing.  Therefore, consideration of respondent's underlying argument was required.

**{¶ 55}** The lead opinion states that the anonymous grievance was filed prior to dismissal by the CMBA, but that is irrelevant to this determination. The disposition of the grievance before the CMBA achieved finality 14 days after respondent was notified of that determination—in early December 2013. The formal complaint filed by disciplinary counsel was time-stamped by the board as filed on December 15, 2014. That was more than 12 months after the CMBA's disposition of the grievance achieved finality.

**{¶ 56}** While we should recognize the independence of the investigative entities in our system of discipline, that independence does not supersede our duty to reasonably interpret our rules so that all rules are given full effect. Disciplinary counsel may investigate, but the finality provision of Gov.Bar R. V(10)(D) precludes us from allowing the anonymous grievance to proceed, since it involves the same victim and the same misconduct alleged by the inspector general's grievance. Any other outcome here renders meaningless Gov.Bar R. V(10)(C) and (D).

**{¶ 57}** In Ohio there are 33 certified grievance committees. Office of Disciplinary Counsel, *2015 Annual Report 7*, http://www.supremecourt.ohio.gov/ DisciplinarySys/odc/annualReports/2015.pdf (accessed Aug. 9, 2016). Members of those certified grievance committees perform an invaluable service in our system of professional discipline. We entrust them with fulfilling an important mission— to protect the citizens, the courts, and the honor and nobility of our great profession. *See Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, at ¶ 34. Our rules afford those committees a measure of great deference. It is only when a disposition is appealed and there is a finding that the certified grievance committee acted unreasonably, unconscionably, or arbitrarily that its determination is subject to reversal. *See* Gov.Bar R. V(10)(D).

**{¶ 58}** While a majority of this court may believe that the CMBA got it wrong and that respondent should be sanctioned, that is not the question that we

must answer. The only issue before us is whether a certified grievance committee's determination not to file a formal complaint ever achieves finality and whether we should respect and give full faith and credit to that disposition when we later find that a formal complaint filed by disciplinary counsel alleged the same misconduct involving the same victim as a grievance that the committee already investigated and disposed of.

{¶ 59} Because the cornerstone of our disciplinary procedure is the filing, investigation, and disposition of "a grievance," Gov.Bar R. V(9), and the grievances at issue here involve the same victim (the taxpayers of Cuyahoga County) and the same misconduct (the falsification of timesheets), I would give full faith and credit to the disposition of the grievance before the CMBA as required by the finality provision explicitly set forth in Gov.Bar R. V(10)(D), overrule the recommendation of the board, and grant respondent's motion to dismiss this action. Therefore, I dissent.

PFEIFER and O'DONNELL, JJ., concur in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, for relator.

Mary L. Cibella, for respondent.

_____